# EXHIBIT C

AHM's Guaranty of the Lease

EXECUTION VERSION

# GUARANTEE

GUARANTEE, dated as of January 31, 2020, made by American Honda Motor Co., Inc., a California corporation (the "Guarantor"), in favor of Bank of Utah, a corporation organized and existing under the laws of the State of Utah, not in its individual capacity but solely as Owner Trustee (the "Lessor"), as the lessor under the Lease Agreement, dated as of January 31, 2020 (as amended, supplemented or otherwise modified from time to time, the "Lease Agreement"), between the Lessor and Honda Aircraft Company, LLC, a Delaware limited liability company, as the lessee (the "Lessee").

## WITNESSETH:

WHEREAS, pursuant to the Lease Agreement, the Lessor has agreed to lease the Aircraft to the Lessee upon the terms and subject to the conditions set forth therein; and

WHEREAS, it is a condition to the willingness of the Lessor to enter into the Purchase Agreement Assignment and/or other acquisition documents relating to the Aircraft and to lease the Aircraft to the Lessee under the Lease Agreement that the Guarantor shall have executed and delivered this Guarantee to the Lessor;

NOW, THEREFORE, in consideration of the premises and to induce the Lessor to enter into the Lease Agreement and to lease the Aircraft to the Lessee, the Guarantor hereby agrees with the Lessor, as follows:

1. Defined Terms. Unless otherwise defined herein, terms defined in the Lease Agreement and used herein shall have the meanings given to them in the Lease Agreement.

(a) As used herein, "Obligations" means the collective reference to all obligations and liabilities of the Lessee to the Lessor (including, without limitation, interest accruing at the then applicable rate provided in the Lease Agreement after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, relating to the Lessee whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with, the Lease Agreement, the other Operative Documents or any other document made, delivered or given in connection therewith, in each case whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, expenses or otherwise (including, without limitation, all reasonable fees and disbursements of counsel to the Lessor that are required to be paid by the Lessee or the Guarantor pursuant to the terms of the Lease Agreement or this Agreement or any other Operative Document); except, that, the obligations of Lessee (the "RVG Obligations") under that certain Residual Value Guarantee Agreement entered into by the Guarantor in favor of the Lessor shall not be considered "Obligations" for purposes of this Guarantee and the Guarantor's obligation to guarantee the RVG Obligations is solely subject to and to the extent of the terms of that certain Honda Parent Guarantee Agreement entered into by the Guarantor in favor of the Lessor.

(b) The words "hereof," "herein" and "hereunder" and words of similar import when used in this Guarantee shall refer to this Guarantee as a whole and not to any particular provision of this Guarantee, and section and paragraph references are to this Guarantee unless otherwise specified.

(c) The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

2. Guarantee. (a) The Guarantor hereby unconditionally and irrevocably guarantees to the Lessor and its successors, indorsees, transferees and assigns, the prompt and complete payment and performance by the Lessee when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations.

(b) The Guarantor further agrees to pay any and all expenses (including, without limitation, all reasonable fees and disbursements of counsel) which may be paid or incurred by the Lessor in enforcing, or obtaining advice of counsel in respect of, any rights with respect to, or collecting, any or all of the Obligations and/or enforcing any rights with respect to, or collecting against, the Guarantor under this Guarantee.

(c) No payment or payments made by the Lessee or any other Person or received or collected by the Lessor from the Lessee or any other Person by virtue of any action or proceeding or any set-off or appropriation or application, at any time or from time to time, in reduction of or in payment of the Obligations shall be deemed to modify, reduce, release or otherwise affect the liability of the Guarantor hereunder which shall, notwithstanding any such payment or payments (other than payments made by the Guarantor in respect of the Obligations or payments received or collected from the Guarantor in respect of the Obligations), remain liable for the Obligations until the Obligations are paid in full.

(d) The Guarantor agrees that whenever, at any time, or from time to time, it shall make any payment to the Lessor on account of its liability hereunder, it will notify the Lessor in writing that such payment is made under this Guarantee for such purpose.

3. Right of Set-off. The Lessor is hereby irrevocably authorized at any time and from time to time without notice to the Guarantor, any such notice being expressly waived by the Guarantor, to set off and appropriate and apply any and all deposits (general or special, time or demand, provisional or final), in any currency, and any other credits, indebtedness or claims, in any currency, in each case whether direct or indirect, absolute or contingent, matured or unmatured, at any time held or owing by the Lessor to or for the credit or the account of the Guarantor, or any part thereof in such amounts as the Lessor may elect, against or on account of the obligations and liabilities of the Guarantor to the Lessor hereunder and claims of every nature and description of the Lessor against the Guarantor, in any currency, whether arising hereunder, under the Lease Agreement or under any Operative Document or otherwise, as the Lessor may elect, whether or not the Lessor has made any demand for payment and although such obligations, liabilities and claims may be contingent or unmatured. The Lessor shall notify the Guarantor in writing promptly of any such set-off and the application made by the Lessor of the proceeds thereof; provided that the failure to give such notice shall not affect the validity of such set-off and application. The rights of the Lessor under this paragraph are in addition to other

rights and remedies (including, without limitation, other rights of set-off) which the Lessor may have under the Lease Agreement and/or applicable law.

4. No Subrogation. Notwithstanding any payment or payments made by the Guarantor hereunder, or any set-off or application of funds of the Guarantor by the Lessor, the Guarantor shall not be entitled to be subrogated to any of the rights of the Lessor against the Lessee or against any collateral security or guarantee or right of offset held by the Lessor for the payment of the Obligations, nor shall the Guarantor seek or be entitled to seek any contribution or reimbursement from the Lessee in respect of payments made by the Guarantor hereunder, until all amounts owing to the Lessor by the Lessee on account of the Obligations are paid in full. If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been paid in full, such amount shall be held by the Guarantor in trust for the Lessor, segregated from other funds of the Guarantor, and shall, forthwith upon receipt by the Guarantor, be turned over to the Lessor in the exact form received by the Guarantor (duly indorsed by the Guarantor to the Lessor, if required), to be applied against the Obligations, whether matured or unmatured, in such order as the Lessor may determine.

5. Amendments, etc. with respect to the Obligations; Waiver of Rights. Unless and until the Obligations have been paid and performed in full, the Guarantor shall remain obligated hereunder notwithstanding that, without any reservation of rights against the Guarantor, and without notice to or further assent by the Guarantor, any demand for payment of any of the Obligations made by the Lessor may be rescinded by the Lessor, and any of the Obligations continued, and the Obligations, or the liability of any other party upon or for any part thereof, or any collateral security or guarantee therefor or right of offset with respect thereto, may, from time to time, in whole or in part, be renewed, extended, amended, modified, accelerated, compromised, waived, surrendered or released by the Lessor, and the Lease Agreement and the other Operative Documents and any other documents executed and delivered in connection therewith may be amended, modified, supplemented or terminated, in whole or in part, as the Lessor may deem advisable from time to time in its reasonable discretion, and any collateral security, guarantee or right of offset at any time held by the Lessor for the payment of the Obligations may be sold, exchanged, waived, surrendered or released. The Lessor shall not have any obligation to protect, secure, perfect or insure any Lien at any time held by it as security for the Obligations or for this Guarantee or any property subject thereto. When making any demand hereunder against the Guarantor or the Lessor may, but shall be under no obligation to, make a similar demand on the Lessee or any other guarantor, and any failure by the Lessor to make any such demand or to collect any payments from the Lessee or any such other guarantor or any release of the Lessee or such other guarantor shall not relieve the Guarantor of its obligations or liabilities hereunder, and shall not impair or affect the rights and remedies, express or implied, or as a matter of law, of the Lessor against the Guarantor. For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings.

6. Guarantee Absolute and Unconditional. The Guarantor waives any and all notice of the creation, renewal, extension or accrual of any of the Obligations and notice of or proof of reliance by the Lessor upon this Guarantee or acceptance of this Guarantee; the Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred, or renewed, extended, amended or waived, in reliance upon this Guarantee; and all dealings

between the Lessee or the Guarantor, on the one hand, and the Lessor, on the other, shall likewise be conclusively presumed to have been had or consummated in reliance upon this Guarantee. The Guarantor waives diligence, presentment, protest, demand for payment and notice of default or nonpayment to or upon the Lessee or the Guarantor with respect to the Obligations. This Guarantee shall be construed as a continuing, absolute and unconditional guarantee of payment without regard to (a) the validity, regularity or enforceability of the Lease Agreement or any other Operative Document, any of the Obligations or any other collateral security therefor or guarantee or right of offset with respect thereto at any time or from time to time held by the Lessor, (b) any defense, set-off or counterclaim (other than a defense of payment or performance) which may at any time be available to or be asserted by the Lessee against the Lessor, or (c) any other circumstance whatsoever (with or without notice to or knowledge of the Lessee or the Guarantor) which constitutes, or might be construed to constitute, an equitable or legal discharge of the Lessee for the Obligations, or of the Guarantor under this Guarantee, in bankruptcy or in any other instance. When pursuing its rights and remedies hereunder against the Guarantor, the Lessor may, but shall be under no obligation to, pursue such rights and remedies as it may have against the Lessee or any other Person or against any collateral security or guarantee for the Obligations or any right of offset with respect thereto, and any failure by the Lessor to pursue such other rights or remedies or to collect any payments from the Lessee or any such other Person or to realize upon any such collateral security or guarantee or to exercise any such right of offset, or any release of the Lessee or any such other Person or of any such collateral security, guarantee or right of offset, shall not relieve the Guarantor of any liability hereunder, and shall not impair or affect the rights and remedies, whether express, implied or available as a matter of law, of the Lessor against the Guarantor.

7. Reinstatement. This Guarantee shall continue to be effective, or be reinstated, as the case may be, if at any time payment, or any part thereof, of any of the Obligations is rescinded or must otherwise be restored or returned by the Lessor upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of the Lessee or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, the Lessee or any substantial part of its property, or otherwise, all as though such payments had not been made.

8. Payments. The Guarantor hereby agrees that the Obligations will be paid to the Lessor without set-off or counterclaim in U.S. Dollars at the office of the Lessor located at 50 South 200 East, Suite 110, Salt Lake City, Utah 84111, USA, Attn: Corporate Trust Services.

9. Representations and Warranties. The Guarantor represents and warrants to the Lessor that:

(a) the Guarantor is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation and has the corporate power and authority and the legal right to own and operate its property, to lease the property it operates and to conduct the business in which it is currently engaged;

(b) the Guarantor has the corporate power and authority and the legal right to execute and deliver, and to perform its obligations under, this Guarantee, and has taken all necessary corporate action to authorize its execution, delivery and performance of this Guarantee;

(c) this Guarantee constitutes a legal, valid and binding obligation of the Guarantor enforceable in accordance with its terms, except as affected by bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting the enforcement of creditors' rights generally, general equitable principles and an implied covenant of good faith and fair dealing;

(d) the execution, delivery and performance of this Guarantee will not violate any provision of any applicable provision of any law, statute, rule, regulation, order, writ, injunction or decree of any Governmental Authority having jurisdiction over the Guarantor that would adversely affect (i) the validity or enforceability of the Operative Documents to which the Guarantor is a party or (ii) the ability of the Guarantor to perform its obligations under the Operative Documents, (b) violate or result in any breach which would constitute a default under, or (other than pursuant to the Operative Documents) result in the creation or imposition of (or the obligation to create or impose) any Lien upon any of the property or assets of the Guarantor pursuant to the terms of any indenture, loan agreement or other agreement for borrowed money to which the Guarantor is a party or by which it or any of its property or assets is bound or to which it may be subject (other than Permitted Liens), or (c) will violate any provision of the articles of incorporation or the bylaws of the Guarantor.

(e) no consent or authorization of, filing with, or other act by or in respect of, any arbitrator or Governmental Authority and no consent of any other Person (including, without limitation, any stockholder or creditor of the Guarantor) is required in connection with the execution, delivery, performance, validity or enforceability of this Guarantee;

(f) no litigation, investigation or proceeding of or before any arbitrator or Governmental Authority is pending or, to the knowledge of the Guarantor, threatened by or against the Guarantor or against any of its properties or revenues (1) with respect to this Guarantee or any of the transactions contemplated hereby, (2) which might, in its reasonable judgment, have a materially adverse effect on its ability to perform its obligations under this Guarantee;

The Guarantor agrees that the foregoing representations and warranties shall be deemed to have been made by the Guarantor on the date of the delivery of the Aircraft under the Lease Agreement on and as of such date of borrowing as though made hereunder on and as of such date.

10. [Reserved].

11. [Reserved].

12. [Reserved].

13. Notices. All notices, requests and demands to or upon the Lessor or the Guarantor to be effective shall be in writing (or by telex, fax or similar electronic transfer confirmed in writing) and shall be deemed to have been duly given or made (1) when delivered by hand or (2) if given by mail, when deposited in the mails by certified mail, return receipt requested, or (3) if by telex, fax or similar electronic transfer, when sent and receipt has been confirmed, addressed as follows:

(a) if to the Lessor, at its address or transmission number for notices provided in its signature page of the Lease Agreement; and

(b) if to the Guarantor, at its address or transmission number for notices set forth under its signature below.

The Lessor and the Guarantor may change its address and transmission numbers for notices by notice in the manner provided in this Section.

14. Severability. Any provision of this Guarantee which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

15. Integration. This Guarantee represents the agreement of the Guarantor with respect to the subject matter hereof and there are no promises or representations by the Lessor relative to the subject matter hereof not reflected herein.

16. Amendments in Writing; No Waiver; Cumulative Remedies. (a) None of the terms or provisions of this Guarantee may be waived, amended, supplemented or otherwise modified except by a written instrument executed by the Guarantor and the Lessor, provided that any provision of this Guarantee may be waived by the Lessor in a letter or agreement executed by the Lessor or by telex or facsimile transmission from the Lessor.

(a) The Lessor shall not by any act (except by a written instrument pursuant to paragraph 16(a) hereof), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Event of Default or in any breach of any of the terms and conditions hereof. No failure to exercise, nor any delay in exercising, on the part of the Lessor, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by the Lessor of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Lessor would otherwise have on any future occasion.

(b) The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law. If any term of this Guarantee or any application thereof shall be invalid, illegal or unenforceable, the remainder of this Guarantee and any other application of such term shall not be affected thereby. The Guarantor will, at its expense, promptly and duly execute and deliver to the Lessor such further documents and assurances to take such further action as the Lessor may from time to time request in writing in order to more effectively carry out the intent and purpose of this Guarantee and the Overall Transaction (as such term is defined in the Lease Agreement) and to establish and protect the rights and remedies created or intended to be created in favor of the Lessor under the Lease Agreement, and hereunder.

17. Section Headings. The section headings used in this Guarantee are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

18. Successors and Assigns. This Guarantee shall be binding upon the successors and assigns of the Guarantor and shall inure to the benefit of the Lessor and its successors and assigns. Lessor intends to assign this Agreement to Apple Bank for Savings (the "Lender") as security for the Lessor's obligations under the Loan Agreement. The Guarantor hereby consents to such assignment, and agrees to pay directly to the Lender (or, after receipt of notice by the Guarantor from the Lender that the Lessor's obligations under the Loan Agreement have been discharged in full, to Lessor) all amounts owing by the Guarantor hereunder.

19. Governing Law. **THIS GUARANTEE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, INCLUDING SECTION 5-1401 AND SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT EXCLUDING TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ALL OTHER CONFLICTS OF LAWS PRINCIPLES AND CHOICE OF LAW RULES OF THE STATE OF NEW YORK.**

[Signature Page Follows]

DocuSign Envelope ID: 5EC5A8B4-E1C7-494E-B160-3795FF224C27

IN WITNESS WHEREOF, the undersigned has caused this Guarantee to be duly executed and delivered by its duly authorized officer as of the day and year first above written.

AMERICAN HONDA MOTOR CO., INC.

DocuSigned by:
Mike Ryan
B2C0686CAA5C42D...

By: ______________________________
Name: Mike Ryan
Title: Vice President, Finance

American Honda Motor Co., Inc.
1919 Torrance Blvd.
Torrance, California 90501
Telephone: (310) 783-2265
Fax No: (310) 783-2210
Attention: Mike Ryan
Email: mike_ryan@ahm.honda.com