# EXHIBIT D

Apple Bank's Security Agreement

**FINAL VERSION**

SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Security Agreement"), dated as of January 31, 2020, made by BANK OF UTAH, a corporation organized and existing under the laws of the State of Utah, not in its individual capacity but solely as Owner Trustee of Matterhorn HondaJet Trust 1 ("Borrower") in favor of APPLE BANK FOR SAVINGS, as Lender (together with its successors and assigns, the "Lender").

W I T N E S S E T H:

WHEREAS, pursuant to the Loan Agreement, dated as of January 31, 2020 (together with all amendments and other modifications, if any, from time to time thereafter made thereto, the "Loan Agreement"), between the Borrower and the Lender, the Lender has extended a Commitment to make Loans to the Borrower; and

WHEREAS, as a condition precedent to the making of the initial Loans under the Loan Agreement, the Borrower is required to execute and deliver this Security Agreement; and

WHEREAS, the Borrower has duly authorized the execution, delivery and performance of this Security Agreement;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in order to induce the Lender to make Loans (including the initial Loans) to the Borrower pursuant to the Loan Agreement, the Borrower agrees, for the benefit of the Lender, as follows:

ARTICLE I

DEFINITIONS

SECTION 1.1 Certain Terms.  The following terms (whether or not underscored) when used in this Security Agreement, including its preamble and recitals, shall have the following meanings (such definitions to be equally applicable to the singular and plural forms thereof):

"Aircraft" means (i) each Airframe to be delivered and used under the Lease with the Engines initially installed on such Airframe, as described in the applicable Security Agreement Supplement, and (ii) all Parts used in connection with such Airframe, all as described in the applicable Agreement Supplement and (iii) all additions, attachments, accessions, replacements and substitutions therefor; and collectively, the Airframes, Engines and Parts.  Unless the context otherwise requires, the term "Aircraft" includes all Logs.

"Airframe" means (i) each Aircraft (excluding Engines or engines from time to time installed thereon) specified by United States registration number and Manufacturer's serial number in the applicable Security Agreement Supplement and (ii) any and all Replacement Parts, so long as same are incorporated or installed in or attached thereto or which have been removed therefrom but where title to which remains vested in the Borrower in accordance with the terms of Section 14 of the Lease; and any replacement airframe which may from time to time be substituted therefor pursuant to Section 19(a) of the Lease.

*Security Agreement*

"Assigned Agreements" is defined in Section 2.1.

"Borrower" is defined in the preamble.

"Collateral" is defined in Section 2.1.

"Engine" means (i) each of the Engines described and listed by applicable manufacturer's serial numbers in the applicable Security Agreement Supplement and originally installed on the Airframe covered by such Security Agreement Supplement (whether or not from time to time thereafter no longer installed on such Airframe) and (ii) any Engine which may from time to time be substituted, pursuant to Section 14 or Section 15 of the Lease, for an Engine, used under the Lease; together in each case with any and all Parts incorporated or installed in or attached thereto or any and all Parts removed therefrom so long as title to the Parts thereto will remain vested in the Lessor in accordance with the terms of Section 14 of the Lease after removal from such Engine.

"Excepted Rights" means the Borrower's rights to pursue separate actions or causes of action against HAC to the extent that HAC failed to pay any Excluded Amounts owing to the Borrower and the Borrower has not declared a Lease Event of Default as a result of such nonpayment.

"Indemnified Parties" is defined in Section 6.2(a).

"Intellectual Property Collateral" means all past, present and future: trade secrets and other proprietary information; trademarks, service marks, business names, designs, logos, indicia, and/or other source and/or business identifiers and the goodwill of the business relating thereto and all registrations or applications for registrations which have heretofore been or may hereafter be issued thereon throughout the world; copyrights (including, without limitation, copyrights for computer programs) and copyright registrations or applications for registrations which have heretofore been or may hereafter be issued throughout the world and all tangible property embodying the copyrights; unpatented inventions (whether or not patentable); patent applications and patents; industrial designs, industrial design applications and registered industrial designs; license agreements related to any of the foregoing set forth in this definition and income therefrom; books, records, writings, computer tapes or disks, flow diagrams, specification sheets, source codes, object codes and other physical manifestations, embodiments or incorporations of any of the foregoing set forth in this definition; the right to sue for all past, present and future infringements of any of the foregoing set forth in this definition; and all common law and other rights throughout the world in and to all of the foregoing set forth in this definition.

"Lease" means that certain Lease dated as of January 31, 2020, between the Borrower and Honda Aircraft Company, LLC, a Delaware limited liability company ("HAC"), as amended, supplemented, restated or otherwise modified from time to time.

"Lender" is defined in the preamble.

"Loan Agreement" is defined in the first recital.

"Logs" means, all logs, manuals and data and all inspection, modification and overhaul records (including all job cards) required to be maintained with respect to the applicable Aircraft under applicable rules and regulations of the FAA and any other governmental authority having jurisdiction, together with all records, documents, manuals, data (current and historical), and serviceable parts, tags or overhaul records pertaining to the applicable Aircraft or any of its Engines or Parts.

"Parts" means all avionics, appliances, parts, instruments, appurtenances, accessories, furnishings and other equipment of whatever nature (other than complete Engines), which may from time to time be incorporated or installed in or attached to the Airframe or either Engine.

"Operative Documents" is defined in the Lease.

"Required Payments" is defined in the Lease.

"Secured Obligations" is defined in Section 2.2.

"Security Agreement" is defined in the preamble.

"Security Agreement Supplement" means a supplement to this Security Agreement in substantially the form set forth in Exhibit A hereto, executed and delivered by the Borrower.

"U.C.C." means the Uniform Commercial Code, as in effect in the State of New York, as the same shall be amended from time to time.

SECTION 1.2 Loan Agreement Definitions.  Unless otherwise defined herein or the context otherwise requires, terms used in this Security Agreement, including its preamble and recitals, have the meanings provided in the Loan Agreement.

SECTION 1.3 U.C.C. Definitions.  Unless otherwise defined herein or the context otherwise requires, terms for which meanings are provided in the U.C.C. are used in this Security Agreement, including its preamble and recitals, with such meanings.

ARTICLE II

SECURITY INTEREST

SECTION 2.1 Grant of Security.  In consideration of the indefeasible repayment in full of all of the Obligations as and when due, the Borrower hereby pledges, hypothecates, assigns, charges, mortgages, delivers and transfers to the Lender and hereby grants to the Lender a continuing security interest in and to, all of the Borrower's right, title and interest, whether now existing or hereafter arising or acquired, in and to the following, whether now or hereafter existing or acquired (the "Collateral"):

735844598

(a) each of the Aircraft and all Parts, additions, attachments and accessions thereto and any and all replacements and substitutions therefor;

(b) all Logs in respect of each Aircraft, Airframe, any Engine or any Part;

(c) all rights of the Borrower under any of the Operative Documents (including without limitation, the Assigned Agreements and the rights more particularly described in clauses (h), (i) and (j) below);

(d) any and all warranty or other claims Borrower may have against any Manufacturer (as defined in the Lease), any engine manufacturer or any supplier, vendor or other facility providing parts or services in respect of any Aircraft, any Engine or any Part;

(e) all moneys paid to or deposited with the Borrower or the Lender and any right to the return or repayment thereof, pursuant to and with regard to the Collateral, the Lease Agreement, and any of the other Operative Documents;

(f) all Required Payments, charter payments, insurance proceeds and any and all other Proceeds from any or all thereof;

(g) all Intellectual Property Collateral related to the foregoing;

(h) the Lease and the Sublease and each Agreement Supplement related thereto and the FAA Bills of Sale, in each case as defined in the Lease, and any warranty bills of sale (collectively, the "Assigned Agreements");

(i) (i) any and all rights of the Borrower to receive rents, payments, income, revenues, issues and profits and other sums of money payable or receivable due and to become due under or pursuant to the Assigned Agreements (including all claims for damages or other sums arising upon the sale or other disposition of or loss of use of or requisition of title to or use of any Aircraft and any Part thereof at any time subject to the Lease or any other Assigned Agreement or upon any Lease Event of Default); (ii) any and all rights of the Borrower to receive proceeds of any insurance, condemnation awards, indemnity, warranty, guaranty, or collateral security with respect to the Assigned Agreements, and the right to be named as a beneficiary on any such insurance policy to which the Borrower is a named beneficiary; (iii) any and all claims of the Borrower for damages arising out of or for breach of or default under the Assigned Agreements; (iv) any and all rights of the Borrower to terminate the Assigned Agreements or perform thereunder and to compel performance and otherwise exercise all remedies thereunder; (v) any and all rights of the Borrower to receive notice and deliver consent in accordance with the applicable provisions of the Assigned Agreements; and (vi) any and all liens and security interests granted to the Borrower pursuant to the Assigned Agreements;

(j) each of the contracts, licenses, permits, agreements, approvals and warranties now owned or hereafter acquired relating to the Aircrafts, including, without limitation, all warranties, guaranties, service contracts and the like and including, without limitation, the right to make all waivers and agreements, to give all notices, consents and releases, to

-4-

take all action upon any of the foregoing and to do any and all things whatsoever that the Borrower is or may become entitled to do under any of the foregoing;

(k) all rights to make determinations, exercise options or elections, give or withhold consents, waivers and approvals, give notices and exercise rights and remedies (including the right to declare or exercise remedies with respect to a Lease Event of Default or any default under any Assigned Agreement and to repossess any property), to appoint any appraiser or to take any other action under or in respect of the Lease or any other Assigned Agreement or accept any surrender or redelivery of any Aircraft and any part thereof, as well as all the rights, powers and remedies on the part of the assignor, whether arising under the Lease or any other Assigned Agreement or by statute or at law or in equity or otherwise, as a result of any Lease Event of Default or any other default under any Assigned Agreement;

(l) solely to the extent related to the foregoing Collateral, all other "Accounts", "Certificated Securities", "Chattel Paper", "Commodity Accounts", "Commodity Contracts", "Deposit Accounts", "Documents", "Equipment", "Fixtures", "General Intangibles", "Goods", "Instruments", "Inventory", "Investment Property", "Proceeds", "Securities", "Securities Account", "Security Entitlements" and "Uncertificated Securities" as such terms are defined in the U.C.C.; and

(m) any and all accessions, substitutions, replacements, products, offspring, rents, issues, profits, returns, income and Proceeds of and from any and all of the foregoing Collateral.

"Proceeds" shall have the meaning ascribed to it under the U.C.C., and, in any event, shall include, but not be limited to, (X) any and all proceeds of any insurance, indemnity, warranty or guarantee payable to Borrower from time to time with respect to any of the Collateral, (Y) any and all payments (in any form whatsoever) made or due and payable to Borrower from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral by any governmental authority or any other Person (whether or not acting under color of governmental authority), and (Z) any and all other amounts from time to time paid or payable under or in connection with any of the Collateral.

Notwithstanding anything in this Section 2.1 to the contrary, the Collateral shall not include Excluded Amounts or Excepted Rights.

SECTION 2.2 Security for Obligations.    This Security Agreement secures the indefeasible payment in full and performance of all Obligations of the Borrower now or hereafter existing under the Loan Agreement, the Notes and each other Loan Document to which the Borrower is or may become a party, whether for principal, interest, costs, fees, expenses or otherwise, and all other obligations of the Borrower now or hereafter existing under this Security Agreement and each other Operative Document to which it is or may become a party (all such Obligations and other obligations of the Borrower being the "Secured Obligations").

735844598

SECTION 2.3  <u>Continuing Security Interest; Transfer of Notes</u>.  This Security Agreement shall create a continuing security interest in the Collateral and shall: (a) remain in full force and effect until indefeasible payment in full in cash of all Secured Obligations and the termination of the Commitment under the Loan Agreement and any other commitments of the Lender to the Borrower pursuant to the Loan Documents; (b) be binding upon the Borrower, its successors, transferees and assigns; and (c) inure, together with the rights and remedies of the Lender hereunder, to the benefit of the Lender and its successors, transferees and assigns.  Without limiting the generality of the foregoing <u>clause (c)</u>, the Lender may assign or otherwise transfer (in whole or in part) any Note or any Loan held by it as provided in Section 11.11.1 of the Loan Agreement, and any other successor or assignee thereof shall thereupon become vested with all the rights and benefits in respect thereof granted to the Lender under any Loan Document (including this Security Agreement) or otherwise, subject, however, to any contrary provisions in such assignment or transfer, and to the provisions of Section 11.11.1 of the Loan Agreement. Upon the indefeasible payment in full of all Secured Obligations and the termination or expiration of all Commitments and any other commitments of the Lender to the Borrower under the Loan Documents, the security interest granted herein shall terminate and all rights to the Collateral shall revert to the Borrower; provided, however, that any such termination or reversion shall be conditional upon no security or payment to the Lender or such other party by the Borrower or such other person being avoided or set aside or ordered to be refunded or reduced by virtue of any provision or enactment relating to bankruptcy, liquidation, winding up, insolvency, dissolution, reorganization, amalgamation or other analogous event or proceeding for the time being in force.  Upon any such payment and termination or expiration, the Lender will, at the Borrower's sole expense, execute and deliver to the Borrower such documents as the Borrower shall reasonably request to evidence such termination.

SECTION 2.4  <u>Borrower Remains Liable</u>.     Anything herein to the contrary notwithstanding (a) the Borrower shall remain liable under the contracts and agreements included in the Collateral (including the Assigned Agreements) to the extent set forth therein, and shall perform all of its duties and obligations under such contracts and agreements to the same extent as if this Security Agreement had not been executed; (b) the exercise by the Lender of any of its rights hereunder shall not release the Borrower from any of its duties or obligations under any such contracts and agreements included in the Collateral; and (c) the Lender shall have no obligation or liability under any such contracts or agreements included in the Collateral by reason of this Security Agreement, nor shall the Lender be obligated to perform any of the obligations or duties of the Borrower thereunder, or to make any payment, or to make any inquiry as to the nature or sufficiency of any payment received by it, or to present or file any claim or to take any action to collect or enforce any claim for payment assigned hereunder.

SECTION 2.5  <u>Security Interest Absolute</u>.  All rights of the Lender and the security interests granted to the Lender hereunder, and all obligations of the Borrower hereunder, shall be absolute and unconditional, irrespective of (a) any lack of validity or enforceability of the Loan Agreement, any Note, the Assigned Agreements or any other Operative Document; (b) the failure the Lender or any holder of any Note (i) to assert any claim or demand or to enforce any right or remedy against the Borrower or any other Person under the provisions of the Loan Agreement, any Note, the Assigned Agreements, any other Operative Document or otherwise, or (ii) to exercise any right or remedy against any other guarantor of, or collateral securing, any Secured Obligations of the Borrower; (c) any change in the time, manner or place of payment of,

- 6 -

or in any other term of, all or any of the Secured Obligations or any other extension, compromise or renewal of any Secured Obligations of the Borrower; (d) any reduction, limitation, impairment or termination of any Secured Obligations of the Borrower for any reason, including any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to (and the Borrower hereby waives any right to or claim of) any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality, nongenuineness, irregularity, compromise, unenforceability of, or any other event or occurrence affecting, any Secured Obligations of the Borrower or otherwise; (e) any amendment to, rescission, waiver, or other modification of, or any consent to departure from, any of the terms of the Loan Agreement, any Note, the Assigned Agreements or any other Operative Document; (f) any addition, exchange, release, surrender or non-perfection of any collateral (including the Collateral), or any amendment to or waiver or release of or addition to or consent to departure from any guaranty, for any of the Secured Obligations; or (g) any other circumstances (other than the indefeasible payment in full in cash of the Secured Obligations) which might otherwise constitute a defense available to, or a legal or equitable discharge of, the Borrower, any surety or any guarantor.

SECTION 2.6   Delivery of Security Agreement Supplements.  Upon the delivery of an Aircraft, the Borrower shall concurrently execute and deliver to the Lender a Security Agreement Supplement duly completed with respect to such Aircraft and, subject to the provisions of the Loan Agreement, shall take such steps with respect to the perfection of the Lien of this Security Agreement against such Aircraft as are called for by this Security Agreement; provided, however that the failure of the Borrower to deliver any Security Agreement Supplement as to any such Aircraft shall not impair the Lien of this Security Agreement as to such Aircraft.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

SECTION 3.1   Representations and Warranties.  The Borrower represents and warrants unto the Lender as set forth in this Article on the Closing Date and on and each date on which the Borrower executes and delivers a Security Agreement Supplement.

SECTION 3.1.1   Validity of Assigned Agreements.  The Assigned Agreements, true and complete copies of which have been furnished to the Lender, have been duly authorized, executed and delivered by the parties thereto, have not been amended or otherwise modified, and are in full force and effect and binding upon and enforceable against the parties thereto in accordance with their respective terms.

SECTION 3.1.2   Ownership, No Liens, Validity, etc.  The Borrower owns the Collateral free and clear of any Lien except for the security interest created by this Security Agreement and except for Permitted Liens. No effective financing statement or other instrument similar in effect covering all or any part of the Collateral is on file in any public office and no registration in respect of any of the Collateral has been made on the International Registry, except such as may have been filed or registered in favor of the Lender relating to this Security Agreement or filed or registered in connection with any Permitted Lien or any Required Cape Town Registration. This Security Agreement creates a valid security interest in the Collateral, securing the payment of the Secured Obligations, and, except for the proper filing of a Uniform Commercial Code Financing

- 7 -

Statement with the Secretary of State of the State of Delaware and the registration of the Required Cape Town Registrations on the International Registry, all filings, registrations and other actions necessary to perfect and protect such security interest have been duly taken, and such security interest shall be a first priority security interest.

SECTION 3.1.3 State of Incorporation; Name. (a) The first paragraph of this Security Agreement lists the true legal name of the Borrower as registered in the jurisdiction in which the Borrower is organized, formed or incorporated; (b) the Borrower's state of incorporation, formation or organization, its organization identification number as designated by the state of its incorporation, formation or organization, and its principal place of business (or, if it has more than one place of business, its chief executive office) are as set forth on Schedule I to this Security Agreement delivered by the Borrower; and (c) the Borrower is not now and has not been known by any trade name.

SECTION 3.1.4 Compliance with Laws. The Borrower is in material compliance with the requirements of all applicable laws, rules, regulations and orders of every governmental authority, the non-compliance with which might materially adversely affect the Collateral or the value of the Collateral or the worth of the Collateral as collateral security.

ARTICLE IV

COVENANTS

SECTION 4.1 Certain Covenants. The Borrower covenants and agrees that, so long as any portion of the Secured Obligations shall remain unpaid or the Lender shall have any outstanding Commitment or the Lender shall have outstanding any other commitment to any Borrower under any Loan Document, the Borrower will, unless the Lender shall otherwise consent in writing, perform the obligations set forth in this Section.

SECTION 4.1.1 As to Assigned Agreements. The Borrower shall at its expense (a) perform and observe all terms and provisions of the Assigned Agreements to be performed or observed by it, maintain the Assigned Agreements in full force and effect, enforce the Assigned Agreements in accordance with its terms, and take all such action to such end as may be from time to time requested by the Lender; and (b) furnish or cause to be furnished to the Lender promptly upon receipt thereof copies of all notices, requests and other documents received by the Borrower under or pursuant to the Assigned Agreements and from time to time (i) furnish to the Lender such information and reports regarding the Collateral as the Lender may reasonably request and (ii) upon request of the Lender make to the appropriate counterparties to such Assigned Agreements such demands and requests for information and reports or for action as the Borrower is entitled to make under the Assigned Agreements.

SECTION 4.1.2 As to Equipment and Inventory Relating to Aircraft. The Borrower hereby agrees that it shall (a) cause all of the Equipment relating to the Aircrafts to be maintained and preserved in the same condition, repair and working order as when new, ordinary wear and tear excepted, and in accordance with any manufacturer's manual; and forthwith, or in the case of any loss or damage to any of such Equipment, as quickly as practicable after the occurrence thereof, make or cause to be made all repairs, replacements, and other improvements

- 8 -

in connection therewith which are necessary or desirable to such end; and upon the reasonable request of the Lender promptly furnish to the Lender such statements respecting any loss or damage to any of such Equipment as Borrower shall have received from HAC; and (b) pay or cause to be paid promptly when due all property and other taxes, assessments and governmental charges or levies imposed upon, and all claims (including claims for labor, materials and supplies) against, the Equipment and Inventory relating to the Aircrafts, except to the extent the validity thereof is being contested in good faith by appropriate proceedings and for which adequate reserves in accordance with GAAP have been set aside.

SECTION 4.1.3  Collection of Payments.  The Lender shall collect and retain all rents, proceeds, payments and other moneys due or to become due under the Lease and the other Assigned Agreements or any other property assigned hereunder and apply such amount to the payment of the Secured Obligations in accordance with the Loan Documents.  The Lender is authorized to endorse, in the name of the Borrower, any item, howsoever received by the Lender, representing any payment on or other proceeds of any of the Collateral.

SECTION 4.1.4  As to Intellectual Property Collateral.  The Borrower shall not, unless the Borrower shall either (i) reasonably and in good faith determine (and notice of such determination shall have been delivered to the Lender) that any of the Intellectual Property Collateral related to the Aircraft is of non-material economic value to the Borrower, or (ii) have a valid business purpose to do otherwise, do any act, or omit to do any act, whereby any of the Intellectual Collateral may lapse or become abandoned or dedicated to the public or unenforceable.  Whenever a Default shall be existing, the Lender shall have the right to bring suit to enforce any or all of the Intellectual Property Collateral or licenses thereunder, in which event the Borrower shall at the request of the Lender do any and all lawful acts and execute any and all proper documents required by the Lender in aid of such enforcement and the Borrower shall promptly, upon demand, reimburse and indemnify the Lender for all reasonable costs and expenses incurred by the Lender in the exercise of its rights under this Section 4.1.4, except to the extent any of the foregoing result from the gross negligence or willful misconduct of the Lender.  At the Lender's request, the Borrower shall execute all such documents and do all such other things which may be necessary or desirable in order to enable the Lender or its nominee to be registered as owner of the Intellectual Property Collateral with any competent registration authority.

SECTION 4.1.5  Transfers and Other Liens.  The Borrower shall not, except as expressly permitted by the Loan Agreement: (a) sell, assign (by operation of law or otherwise) or otherwise dispose of any of the Collateral or create or suffer to exist any Lien or other charge or encumbrance upon or with respect to any of the Collateral to secure obligations (monetary or otherwise) of any Person or entity, except for the security interest created by this Security Agreement; (b) cancel or terminate any Assigned Agreements or consent to or accept any cancellation or termination thereof; (c) amend, supplement, restate or otherwise modify the Assigned Agreements or give any consent, waiver or approval thereunder; (d) waive any default under or breach of any Assigned Agreements; or (e) take any other action in connection with the Assigned Agreements which would impair the value of the interest or rights of the Borrower thereunder or which would impair the interest or rights of the Lender.

735844598

SECTION 4.1.6 <u>Further Assurances, etc</u>. The Borrower agrees that, from time to time at its own expense, the Borrower will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that the Lender may request, in order to perfect, preserve and protect any security interest granted or purported to be granted hereby or to enable the Lender to exercise and enforce its rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, the Borrower will (a) if any Collateral shall be evidenced by a promissory note or other instrument, negotiable document or chattel paper, deliver and pledge to the Lender hereunder such promissory note or instrument, negotiable document or chattel paper duly indorsed and accompanied by duly executed instruments of transfer or assignment, all in form and substance satisfactory to the Lender; (b) at the request of the Lender, mark conspicuously on each copy of the Assigned Agreements and of each other chattel paper which evidences any Collateral and each of its records pertaining to the Collateral with a legend, in form and substance satisfactory to the Lender, indicating that such Assigned Agreements and such chattel paper have been assigned to the Lender and are subject to the security interest pursuant hereto; (c) file such financing or continuation statements, or amendments thereto, and such other instruments or notices, as may be necessary or desirable, or as the Lender may request, in order to perfect and preserve the security interests and other rights granted or purported to be granted to the Lender hereby; (d) register or cause to be registered or consent to the registration with the International Registry of all Required Cape Town Registrations; (e) furnish to the Lender, from time to time at the Lender's request, statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Lender may reasonably request, all in reasonable detail; (f) warrant and defend the right and title herein granted to the Lender in and to the Collateral (and all right, title and interest represented by the Collateral) against the claims and demands of all Persons whomsoever; (g) not change its location or its name, identity or corporate structure or its state of incorporation, formation or organization without providing the Lender at least thirty (30) days' prior notice to such change and taking all actions required by the <u>first sentence</u> of this <u>Section 4.1.6</u>; and (h) upon the acquisition after the date hereof by the Borrower of any Collateral, with respect to which the security interest granted hereunder is not perfected automatically upon such acquisition, take such actions with respect to such Collateral or any part thereof as required by the Loan Documents. With respect to the foregoing and the grant of the security interest hereunder, the Borrower hereby authorizes the Lender to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral without the signature of the Borrower where permitted by law and expressly consents to the registration of any Required Cape Town Registration on the International Registry.

ARTICLE V

[RESERVED].

ARTICLE VI

REMEDIES

SECTION 6.1 <u>Certain Remedies</u>. If any Event of Default shall have occurred and be continuing:

735844598

(a) The Lender may exercise in respect of the Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party on default under the U.C.C. (whether or not the U.C.C. applies to the affected Collateral) and also may (i) exercise any rights and remedies of the Borrower under or in connection with the Assigned Agreements or otherwise in respect of the Collateral, including without limitation, any and all rights of the Borrower to demand or otherwise require payment of any amount under, or performance of any provision of, the Assigned Agreements, (ii) require the Borrower to, and the Borrower hereby agrees that it will, at its expense and upon request of the Lender forthwith, assemble all or part of the Collateral as directed by the Lender and make it available to the Lender at a place to be designated by the Lender which is reasonably convenient to both parties, and (iii) without notice except as specified below or, if notice cannot be waived under the U.C.C., as required to be provided by the U.C.C., sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of the Lender's offices or elsewhere, for cash, on credit or for future delivery, and upon such other terms as the Lender may deem commercially reasonable.  The Borrower agrees that, to the extent notice of sale shall be required by law, at least ten (10) days' prior notice to the Borrower of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification.  The Lender shall not be obligated to make any sale of Collateral regardless of notice of sale having been given.  The Lender may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

(b) All cash proceeds received by the Lender in respect of any sale of, collection from, or other realization upon all or any part of the Collateral may, in the discretion of the Lender, be held by the Lender as additional collateral security for, or then or at any time thereafter, subject to and in accordance with the terms of the Loan Agreement, including specifically, but without limitation, Section 10.3(c) of the Loan Agreement, be applied (after payment of any amounts payable to the Lender pursuant to the Loan Agreement and Section 6.2 hereof) in whole or in part by the Lender against, all or any part of the Secured Obligations in such order as the Lender shall elect.  Any surplus of such cash or cash proceeds held by the Lender and remaining after payment in full of all the Secured Obligations shall be paid over to the Borrower or to whomsoever may be lawfully entitled to receive such surplus.

(c) All payments received by the Borrower under or in connection with the Assigned Agreements or otherwise in respect of the Collateral shall forthwith be paid over to the Lender in the same form as so received (with any necessary indorsements).

SECTION 6.2  Indemnity and Expenses.

(a) Without limiting the generality of the provisions of Section 11.4 of the Loan Agreement, the Borrower agrees to indemnify the Lender and each of its respective officers, directors, employees and agents (the "Indemnified Parties") from and against any and all claims, losses and liabilities arising out of or resulting from this Security Agreement (including, without limitation, enforcement of this Security Agreement),

735844598

except claims, losses or liabilities resulting from the Lender's gross negligence or wilful misconduct; PROVIDED, HOWEVER, THAT IT IS THE INTENTION OF THE PARTIES HERETO THAT EACH INDEMNIFIED PARTY BE INDEMNIFIED IN THE CASE OF ITS OWN NEGLIGENCE (OTHER THAN GROSS NEGLIGENCE), REGARDLESS OF WHETHER SUCH NEGLIGENCE IS SOLE OR CONTRIBUTORY, ACTIVE OR PASSIVE, IMPUTED, JOINT OR TECHNICAL. If and to the extent that the foregoing undertaking may be unenforceable for any reason, the Borrower hereby agrees to make the maximum contribution to the payment and satisfaction of each of the foregoing which is permissible under applicable law.

(b) The Borrower will upon demand pay to the Lender the amount of any and all reasonable expenses, including the reasonable fees and disbursements of its counsel and of any experts and agents, which the Lender may incur in connection with (i) the administration of this Security Agreement, (ii) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, any of the Collateral, (iii) the exercise or enforcement of any of the rights of the Lender hereunder, or (iv) the failure by the Borrower to perform or observe any of the provisions hereof.

SECTION 6.3 Warranties.   The Lender may sell the Collateral without giving any warranties or representations as to the Collateral.  The Lender may disclaim any warranties of title or the like.  This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

SECTION 7.1 Loan Document.  This Security Agreement is a Loan Document executed pursuant to the Loan Agreement and shall (unless otherwise expressly indicated herein) be construed, administered and applied in accordance with the terms and provisions thereof.

SECTION 7.2 Amendments; etc.  No amendment to or waiver of any provision of this Security Agreement nor consent to any departure by the Borrower herefrom, shall in any event be effective unless the same shall be in writing and signed by the Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 7.3 Addresses for Notices.  All notices and other communications provided to any party hereto under this Security Agreement shall be in writing or by facsimile (with telephonic confirmation of receipt) and addressed, delivered or transmitted to such party at its address or facsimile number as specified in the Loan Agreement or as may be designated by such party in a notice to the other parties.  Any notice, if mailed and properly addressed with postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by facsimile, shall be deemed given when transmitted.

735844598

SECTION 7.4  <u>Headings</u>.  The various headings of this Security Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Security Agreement or any provisions hereof.

SECTION 7.5  <u>Severability</u>.  Any provision of this Security Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such provision and such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Security Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 7.6  <u>Execution in Counterparts, Effectiveness, etc</u>.  This Security Agreement may be executed by the parties hereto in several counterparts, each of which shall be executed by the Borrower and the Lender and be deemed to be an original and all of which shall constitute together but one and the same agreement.  This Security Agreement shall become effective when counterparts hereof executed on behalf of the Borrower and the Lender (or notice thereof satisfactory to the Lender) shall have been received by the Lender and notice thereof shall have been given by the Lender to the Borrower.

SECTION 7.7  [Reserved].

SECTION 7.8  <u>Governing Law</u>.   THIS SECURITY AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, EXCEPT TO THE EXTENT THAT THE VALIDITY OR PERFECTION OR PRIORITY OF THE SECURITY INTEREST HEREUNDER, OR REMEDIES HEREUNDER, IN RESPECT OF ANY PARTICULAR COLLATERAL ARE GOVERNED BY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF NEW YORK.  This Security Agreement and the other Operative Documents to which they are party constitute the entire understanding among the parties hereto with respect to the subject matter hereof and supersedes any prior agreements, written or oral, with respect thereto.

SECTION 7.9  <u>Forum Selection and Consent to Jurisdiction</u>.   ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF THE LENDER OR THE BORROWER MAY BE BROUGHT AND MAINTAINED NON-EXCLUSIVELY IN ANY NEW YORK STATE OR FEDERAL COURT SITTING IN THE BOROUGH OF MANHATTAN, THE CITY OF NEW YORK; <u>PROVIDED, HOWEVER</u>, THAT ANY SUIT SEEKING ENFORCEMENT AGAINST ANY COLLATERAL OR OTHER PROPERTY MAY BE BROUGHT, AT THE LENDER'S OPTION, IN THE COURTS OF ANY JURISDICTION WHERE SUCH COLLATERAL OR OTHER PROPERTY MAY BE FOUND.  THE BORROWER HEREBY IRREVOCABLY AND UNCONDITIONALLY SUBMITS FOR ITSELF AND ITS PROPERTY TO THE NON EXCLUSIVE *IN PERSONAM* JURISDICTION OF ANY NEW YORK STATE OR FEDERAL COURT SITTING IN THE BOROUGH OF MANHATTAN, THE CITY OF NEW YORK FOR THE PURPOSES OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO ANY OF THIS SECURITY AGREEMENT OR ANY OPERATIVE DOCUMENT; AND TO THE EXTENT PERMITTED BY APPLICABLE LAW, WAIVES,

73S844598

AND AGREES NOT TO ASSERT, BY WAY OF MOTION, AS A DEFENSE, OR OTHERWISE, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE NAMED COURTS, THAT ITS PROPERTY IS EXEMPT OR IMMUNE FROM EXECUTION, THAT THE SUIT, ACTION OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM, THAT THE VENUE OF THE SUIT, ACTION OR PROCEEDING IS IMPROPER, OR THAT THIS SECURITY AGREEMENT OR ANY RELATED DOCUMENT OR THE SUBJECT MATTER HEREOF OR THEREOF MAY NOT BE ENFORCED IN OR BY SUCH COURTS. THE BORROWER FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS BY REGISTERED MAIL, POSTAGE PREPAID, OR BY PERSONAL SERVICE WITHIN OR WITHOUT THE STATE OF NEW YORK. TO THE EXTENT THAT THE BORROWER HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, THE BORROWER HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS SECURITY AGREEMENT AND THE OTHER LOAN DOCUMENTS.

SECTION 7.10 Waiver of Jury Trial. THE BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF THE LENDER OR THE BORROWER. THE BORROWER ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION (AND EACH OTHER PROVISION OF EACH OTHER LOAN DOCUMENT TO WHICH IT IS A PARTY) AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER ENTERING INTO THIS SECURITY AGREEMENT AND EACH SUCH OTHER LOAN DOCUMENT.

SECTION 7.11 Filing as a Financing Statement. At the option of the Lender, this Security Agreement, or a carbon, photographic or other reproduction of this Security Agreement or of any Uniform Commercial Code financing statement, continuations and amendments thereto, covering all of the Collateral or any portion thereof shall be sufficient as a Uniform Commercial Code financing statement and may be filed as such without the signature of the Borrower where and to the full extent permitted by applicable law.

SECTION 7.12 No Recourse. The obligations of the Borrower under this Security Agreement are intended to be non-recourse obligations of the Borrower, with all recourse limited solely to the Collateral, and all of the statements, representations, covenants and agreements made by the Borrower contained herein are made and intended only for the purpose of binding the Borrower and establishing the existence of rights and remedies provided for herein which can be exercised and enforced against the Borrower. Therefore, anything contained in this Security Agreement to the contrary notwithstanding, no recourse may be made against any stockholder,

member, Affiliate, director, officer, employee or agent of the Borrower with respect to claims against the Borrower arising under or relating to this Security Agreement.

SECTION 7.12  Release of Liens.  At such time as the Lender has authorized the release of Liens on all or any portion of the Collateral in accordance with Section 11.19 of the Loan Agreement, the Liens granted to the Lender on the Collateral or such portion thereof shall be automatically, unconditionally and simultaneously released, and the Lender agrees to execute and deliver any releases, deeds or other instruments reasonably requested by the Borrower with respect to any such release of the applicable Collateral at the Borrower's cost and expense, including in respect of the termination of any financing statements or Cape Town Registrations made pursuant to the Operative Documents in favor of the Lender.

[Remainder of this page intentionally left blank]

735844598

DocuSign Envelope ID: A442AC47-E2FC-4EE7-9CC0-FA781B4DAEF8

IN WITNESS WHEREOF, the parties hereto have caused this Security Agreement to be duly executed and delivered by its officer thereunto duly authorized as of the date first above written.

BANK OF UTAH, not in its individual capacity but solely as Owner Trustee

DocuSigned by:

*Jon Croasmun*

48E0D6FF3DBC4C3...

By: _____

Name:       Jon Croasmun

Title:          Sr. Vice President

*Security Agreement*

735844598

DocuSign Envelope ID: CA1E9425-5C3D-4911-A0BD-A5792F16C4EA

APPLE BANK FOR SAVINGS, as Lender

By:_____

Name:   Dana MacKinnon
Title:

Senior Vice President

*Security Agreement*

735844598

SCHEDULE I
to Security Agreement

## STATE OF INCORPORATION, ETC.

Item A.        State of Incorporation:  Utah

Item B.        Organizational Identification Number:  567732-0142

Item C.        Principal Place of Business:

Bank of Utah
50 South 200 East, Suite 110
Salt Lake City, Utah 84111

*Security Agreement*

EXHIBIT A

FORM OF SECURITY AGREEMENT SUPPLEMENT (MSN [●])

Apple Bank for Savings
122 East 42nd Street
New York, NY 10168
Attention: Dana R. MacKinnon
Facsimile No.: (212) 224-6596

[Date]

Re:  Security Agreement,
      dated as of January 31, 2020

Ladies and Gentlemen:

Reference is made to the Security Agreement, dated as of January 31, 2020 (as amended, modified, restated and/or supplemented from time to time, the "Security Agreement"), among the undersigned, as Borrower and Apple Bank for Savings, as lender (in such capacity, and together with any permitted successor or assign thereto or any permitted replacement thereof, the "Lender"). Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to them in the Loan Agreement and Security Agreement (whether defined therein or incorporated by reference to another agreement or document).

1.     The undersigned hereby delivers, as of the date first above written, the attached Annex I pursuant to Section 2.6 of the Security Agreement.

2.     The undersigned Bor rower hereby confirms that the property included in the attached Annex constitutes part of the Collateral and hereby makes each representation and warranty set forth in Article III of the Security Agreement (as supplemented by the attached Annex I).

4.     Attached as Annex I is a duly completed description of the Aircraft constituting part of the Collateral granted by the undersigned Borrower and not described in the schedules to the Security Agreement, or another Security Agreement Supplement.

5.     This Security Agreement Supplement is delivered in and shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, including all matters of construction, validity and performance.

*[Signature Page Follows]*

735844598

Very truly yours,

[-]

By:_____
    Name:
    Title:


Acknowledged and agreed to as of the date first above written:


APPLE BANK FOR SAVINGS,
as Lender


By:_____
    Name:
    Title:

ANNEX I
SECURITY AGREEMENT SUPPLEMENT

## AIRCRAFT OBJECTS

| Airframe Manufacturer and Model | Airframe MSN | Engine Manufacturer and Engine Model | Engine MSNs |
|---|---|---|---|
| [_____] | [_____] | [_____] | [_____] |

Exhibit-A-3

**FINAL VERSION**

SECURITY AGREEMENT SUPPLEMENT

(MSN: 42000155, 42000156, 42000073, 42000111, 42000160, 42000161, 42000118)

Apple Bank for Savings
122 East 42nd Street
New York, NY 10168
Attention: Dana R. MacKinnon
Facsimile No.: (212) 224-6596

January 31, 2020

Re:  Security Agreement,
     dated as of January 31, 2020

Ladies and Gentlemen:

Reference is made to the Security Agreement, dated as of January 30, 2020 (as amended, modified, restated and/or supplemented from time to time, the "Security Agreement"), among the undersigned, as Borrower and Apple Bank for Savings, as lender (in such capacity, and together with any permitted successor or assign thereto or any permitted replacement thereof, the "Lender"). Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to them in the Loan Agreement and Security Agreement (whether defined therein or incorporated by reference to another agreement or document).

1.      The undersigned hereby delivers, as of the date first above written, the attached Annex I pursuant to Section 2.6 of the Security Agreement.

2.      The undersigned Borrower hereby confirms that the property included in the attached Annex constitutes part of the Collateral and hereby makes each representation and warranty set forth in Article III of the Security Agreement (as supplemented by the attached Annex I).

4.      Attached as Annex I is a duly completed description of the Aircraft constituting part of the Collateral granted by the undersigned Borrower and not described in the schedules to the Security Agreement, or another Security Agreement Supplement.

5.      This Security Agreement Supplement is delivered in and shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, including all matters of construction, validity and performance.

6.      This Security Agreement Supplement may be executed by the parties hereto in several counterparts, each of which shall be executed by the Borrower and the Lender and be deemed to be an original and all of which shall constitute together but one and the same agreement.

*[Signature Page Follows]*

Attachment No. 1
to SECURITY AGREEMENT

DocuSign Envelope ID: 5F2CC05C-BB6F-4FA2-BB54-4215A1F88623

Very truly yours,

BANK OF UTAH, not in its individual capacity,
but solely as Owner Trustee

By: _____
    Name:  Jon Croasmun
    Title:   Sr. Vice President


Acknowledged and agreed to as of the date first above written:


APPLE BANK FOR SAVINGS,
as Lender


By: _____
    Name:
    Title:

DocuSign Envelope ID: CA1E9425-5C3D-4911-A0BD-A5792F16C4EA

Very truly yours,

BANK OF UTAH, not in its individual capacity,
but solely as Owner Trustee


By:_____
    Name:
    Title:


Acknowledged and agreed to as of the date first above written:


APPLE BANK FOR SAVINGS,
as Lender

By:_____
    Name: Dana MacKinnon
    Title:
       Senior Vice President

*[Signature Page to Security Agreement Supplement]*

ANNEX I
SECURITY AGREEMENT SUPPLEMENT

AIRCRAFT OBJECTS

| Airframe Manufacturer and Model | Airframe MSN | Engine Manufacturer and Engine Model | Engine MSNs |
|---|---|---|---|
| Honda Aircraft Company, LLC/model HA-420 | 42000155 | GE Honda Aero Engines/ model HF120-H1A | 883423/ 883422 |
| Honda Aircraft Company, LLC/model HA-420 | 42000156 | GE Honda Aero Engines/ model HF120-H1A | 883425/ 883424 |
| Honda Aircraft Company, LLC/model HA-420 | 42000073 | GE Honda Aero Engines/ model HF120-H1A | 883221/ 883222 |
| Honda Aircraft Company, LLC/model HA-420 | 42000111 | GE Honda Aero Engines/ model HF120-H1A | 883335/ 883334 |
| Honda Aircraft Company, LLC/model HA-420 | 42000160 | GE Honda Aero Engines/ model HF120-H1A | 883433/ 883466 |
| Honda Aircraft Company, LLC/model HA-420 | 42000161 | GE Honda Aero Engines/ model HF120-H1A | 883441/ 883434 |
| Honda Aircraft Company, LLC/model HA-420 | 42000118 | GE Honda Aero Engines/ model HF120-H1A | 883351/ 883352 |

Each of which engines has at least 550 rated takeoff horsepower or the equivalent thereof.