# EXHIBIT E

Matterhorn Notes

PROMISSORY NOTE (MSN 160)

$1,500,000.00                                                                                    New York, New York
                                                                                                  January 30, 2020

FOR VALUE RECEIVED, Matterhorn Aviation Services Limited, an Irish limited company, with a principal address of business at Embassy House, Herbert Park Lane, Ballsbridge, Dublin 4, Ireland (the "Maker"), promises to pay to the order of Honda Aircraft Company, LLC, a Delaware limited liability company with a principal address of business at 6430 Ballinger Road, Greensboro, NC 27410 USA, Attention: contracts@haci.honda.com (the "Lender"), the principal sum of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00), payable at the times hereinafter specified, together with interest, in arrears, from the date hereof on the unpaid balance from time to time outstanding and on all unpaid or deferred installments of interest, whether before or after the maturity of or default under this Note, at a rate of interest equal to two percent (2.00%) per annum. Capitalized terms used and not otherwise defined herein shall have the meaning assigned thereto in that certain Aircraft Lease Agreement by and between the Lender, as lessee, and the Owner Trustee, as lessor, dated as of the date hereof (as may be amended, restated and/or modified from time to time, the "Lease Agreement").

### Recitals

A.  Lender is the manufacturer of that certain HondaJet HA-420 aircraft described on Exhibit A attached hereto (the "Aircraft");

B.  Bank of Utah, not in its individual capacity but solely as Owner Trustee (the "Owner Trustee") under that certain Trust Agreement (the "Trust Agreement") by and between the Owner Trustee and MAS ONE USA LLC ("MAS One"), as trustor, has agreed to purchase the Aircraft from the Lender pursuant to the terms of the Purchase Agreement and Purchase Agreement Assignment (collectively, the "Purchase Documents");

C.  The Maker is an affiliate of MAS One, the trustor under the Trust Agreement, and has agreed to enter into this Note to make certain payments required under the terms of the Purchase Documents on behalf of the Owner Trustee and MAS One as provided for below;

D.  Lender as lessee has also agreed to lease the Aircraft from the Owner Trustee as lessor pursuant to the terms of the Lease Agreement and to sublease the Aircraft to Wing Spirit, Inc., a Hawaii corporation (the "Sublessee"), as sublessee, pursuant to the terms of that certain Aircraft Sublease Agreement by and between the Lender, as sublessor, and the Sublessee, dated as of the date hereof (as may be amended, restated and/or modified from time to time, the "Sublease Agreement," and together with the Lease Agreement, the "Lease Documents");

E.  In connection with the execution of the Lease Agreement, the Lender has also entered into a certain Residual Value Guarantee Agreement in favor of the Owner Trustee dated as of the date hereof relating the Aircraft (as may be amended, restated and/or modified from time to time, the "Residual Value Guarantee" and together with the Lease Documents and the other documents executed by the Lender and its affiliates in connection therewith, the "Transaction Documents"), pursuant to which the Lender has agreed to guarantee the residual value of the Aircraft; and

F.  With respect to the payment of the purchase price to be made by the Owner Trustee to Lender under terms of the Purchase Documents and notwithstanding anything to the contrary contained in the Transaction Documents or the funds flow memorandum related thereto, the Owner Trustee, MAS One, and the Maker have requested and the Lender has agreed to defer (the "Deferred Payment") of a portion of such purchase price payment in the amount of $1,500,000 until the Maturity Date, and on the Delivery Date (as such term is defined in the Lease Agreement), the Lender has agreed to make such Deferred Payment on behalf of the Maker, the Owner Trustee and MAS One in connection with the purchase by the Owner Trustee of the Aircraft subject to the terms of this Note.

NOW THEREFORE, in consideration of the foregoing premises and the mutual benefits to be derived by the Maker and its affiliate, MAS One, and the Lender from a continuing relationship under the Transaction Documents and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree:

1.  **Payments.** Notwithstanding anything in this Note or the Transaction Documents to the contrary, the entire unpaid principal balance of this Note and all accrued and unpaid interest thereon shall be due and payable on the first to occur of (i) the Base Term Expiry Date (as such term is defined in the Lease Agreement)

#59637959

related to the Aircraft, (ii) the termination of the Lease Agreement under the terms thereof, or (iii) October 31, 2020 (collectively, the "Maturity Date"). THE MAKER AGREES AND ACKNOWLEDGES THAT (1) THE LOAN MADE TO THE MAKER UNDER THIS NOTE IS NOT A FULLY AMORTIZING LOAN; AND (2) A SUBSTANTIAL PRINCIPAL BALANCE OR BALLOON PAYMENT OF PRINCIPAL SHALL BE DUE AND PAYABLE ON THE MATURITY DATE OF THIS NOTE.

2. **Interest Computation.** All payments under this Note shall be made in immediately available funds and shall be credited first to accrued interest then due, thereafter to unpaid principal, and then to other charges, fees, costs, and expenses payable by the Maker under this Note in such order and amounts as the Lender may determine in its sole and absolute discretion. If any payment of interest is not made when due, at the option of the Lender, such interest payment shall bear interest at the same rate as principal from and after the due date of the interest payment. Principal and interest shall be payable only in lawful money of the United States of America. The receipt of any check or other item of payment (a "payment item") by the Lender, at its option, shall not be considered a payment until such payment item is honored when presented for payment at the drawee bank or institution, and the Lender, at its option, may delay the credit of such payment until such payment item is so honored. Notwithstanding anything to the contrary contained in this Note, interest at the rates provided for in this Note shall be computed on the basis of a three hundred sixty (360) day year for the actual number of days during which the principal balance of this Note is outstanding. The Maker acknowledges and agrees that the calculation of interest on the basis described in the immediately preceding sentence may result in the accrual and payment of interest in amounts greater than those which would be payable if interest were calculated on the basis of a three hundred sixty-five (365) day year.

3. **Prepayment.** The Maker shall have the right to prepay all or part of the outstanding principal balance of this Note at any time without payment to the Lender of a prepayment fee or charge.

4. **After Maturity/Default Rate of Interest.** From and after either (a) an Event of Default (as such term is defined below); or (b) the maturity of this Note (whether the stated maturity date of this Note or the maturity date resulting from the Lender's acceleration of unpaid principal and interest), then in either of such circumstances, interest on the unpaid principal balance of this Note shall accrue at a rate equal to two percent (2.00%) per annum above the otherwise applicable interests rate.

5. **Events of Default.** The occurrence of any one or more of the following events will constitute an Event of Default hereunder: (a) Nonpayment of any installment of principal and/or interest due under this Note when it shall become due and payable (no prior demand therefor being necessary); (b) (i) The insolvency or inability of the Maker to pay its debts as they mature; (ii) the appointment of a receiver, trustee, custodian or other fiduciary, for, or for any of the property of, the Maker; (iii) the making of any assignment for the benefit of creditors, or the making of or entering into a trust mortgage or deed or other instrument or similar import for the benefit of creditors, by the Maker; or (iv) the convening of a meeting of the creditors, or the selection of a committee representing the creditors of the Maker; (c) The filing of a petition, complaint, motion or other pleading seeking relief under any receivership, insolvency, or debtor relief law, or seeking any readjustment of indebtedness, reorganization, composition, extension or any similar type of relief, or the filing of a petition, complaint, or motion under any chapter of the federal bankruptcy code, 11 U.S.C. 101, et. seq., as the same now exists or may hereafter be amended (the "Bankruptcy Code"), by the Maker; (d) The filing of a petition, complaint, motion or other pleading seeking any relief under any receivership, insolvency, or debtor relief law, or under any chapter of the Bankruptcy Code, or seeking any readjustment of indebtedness, reorganization, composition, extension or any similar type of relief, or the entry of any order for relief under any chapter of the Bankruptcy Code, against, the Maker; provided, however, that if the Maker shall immediately notify the Lender in writing of the filing of any such petition, complaint, motion or other pleading against the Maker and shall provide evidence satisfactory to the Lender that the Maker has in good faith and within 10 days after the filing of any such petition, complaint, motion or other pleading filed an answer thereto contesting same, then there shall be no Event of Default under this subparagraph (d) until the earliest of (i) the entry of an order for relief or a judgment under any proceedings referred to in this subparagraph (d), (ii) the appointment of a receiver, trustee, custodian or other fiduciary in any such proceeding, or (iii) the expiration of a period of 30 days, at the end of which such petition, complaint, motion or other pleading remains undismissed; (e) The entry of any judgment against, or the attachment or garnishment of any of the property, goods or credits of, the Maker which remains unpaid, unstayed, undismissed or unbonded for a period of 30 days; or if any foreclosure is instituted (by judicial proceedings, by publication of notice pursuant to a power of sale or otherwise) against the Maker under any mortgage, deed of trust or security agreement granted by the Maker and is not dismissed or terminated for a period of 15 days; (f) The dissolution, liquidation or termination of existence of the Maker or a sale of substantially all of the assets of the Maker out of the ordinary course of business; or (g) a breach by the Maker of any other term or condition of this Note.

6. **Remedies.** If an Event of Default occurs and is continuing, the Lender may exercise any right, power or remedy permitted by law or as set forth herein, including, without limitation, the right to declare the entire unpaid principal amount hereof and all interest accrued hereon and such principal, interest and other sums shall thereupon become, immediately due and payable.

7. **Waiver.** The Maker waives demand, notice (except to the extent expressly required herein), presentment, protest, demand for payment, notice of dishonor, notice of protest and diligence of collection of this Note. The Maker consents to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Lender with respect to the payment or other provisions of this Note. The liability of the Maker hereunder shall be absolute and unconditional and without regard to the liability of any other party hereto, and the Maker agrees that makers, endorsers, guarantors and sureties may be added or released without notice and without affecting the Maker's liability hereunder.

8. **Late Charge.** If any installment of interest and/or payment of principal under this Note is not paid within ten (10) days after the date on which it is due, the Maker shall immediately pay a late charge equal to two percent (2.00%) of such installment to the Lender to compensate the Lender for administrative costs and expenses incurred in connection with such late payment. The Maker agrees that the actual damages suffered by the Lender because of any late installment payment are extremely difficult and impracticable to ascertain, and the late charge described in this Section represents a reasonable attempt to fix such damages under the circumstances existing at the time this Note is executed. The Lender's acceptance of any late charge shall not constitute a waiver of any of the terms of this Note and shall not affect the Lender's right to enforce any of its rights and remedies against any person liable for payment of this Note.

9. **Application of Payments.** Upon the occurrence and during the continuation of any Event of Default, the Lender, at its option, shall have the right to apply all payments made under this Note to principal, interest, and other charges, fees, costs and expenses payable by the Maker under this Note in such order and amounts as the Lender may determine in its sole and absolute discretion.

10. **Modifications; Loss of Note.** No modification or waiver by the Lender of any of the terms of this Note shall be valid or binding on Lender unless such modification or waiver is in writing and signed by the Lender. If this Note is lost, stolen, or destroyed, upon the Maker's receipt of a reasonably satisfactory indemnification agreement executed by the Lender, or if this Note is mutilated, upon the Lender's surrender of the mutilated Note to the Maker, the Maker shall execute and deliver to the Lender a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

11. **Applicable Law; Successors.** This Note shall be governed by and interpreted in accordance with the laws of the State of New York (determined without regard to its conflicts of law principles other than Section 5-1401 and Section 5-1402 of the New York General Obligations Law). The Lender and the Maker agree that the courts of the State of New York and Federal District Court located in New York County, New York, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Note, regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or violation of any governmental requirements. The Maker irrevocably consents to the personal jurisdiction of such courts and to such venue. The Maker waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

12. **Setoff.** The Maker grants to the Lender a right of setoff in all property of the Maker, now or hereafter in the possession of the Maker, as security for the payment of this Note and any other liabilities of the Maker to the Lender, which right of setoff shall be enforceable by the Lender on the Maturity Date or at any time after and during the continuance of an Event of Default hereunder and subject to all provisions of this Note, as if such property were specifically pledged hereunder. For the avoidance of doubt and notwithstanding anything to the contrary in this Note, the Transaction Documents or any other documents executed in connection therewith, the Lender shall have the right to exercise its setoff right with respect to any payment that the Lender must make to the Maker, the Owner Trustee or MAS One under the Transaction Documents, including, without limitation, the Lease Documents or the Residual Value Guarantees, or any payment that an affiliate of the Lender must make to the Maker, the Owner Trustee or MAS One under the terms of the Transaction Documents.

13. **Indemnification.** The Maker hereby indemnifies and agrees to defend and hold harmless the Lender, its officers, employees and agents, from and against any and all losses, damages, or liabilities and from any suits, claims or demands, including reasonable attorneys' fees incurred in investigating or defending such

claim, suffered by any of them and caused by, arising out of, or in any way connected with this Note or the transactions contemplated therein (unless determined by a final judgment of a court of competent jurisdiction to have been caused solely by the gross negligence or willful misconduct of any of the indemnified parties). If any action shall be brought against the Lender, its officers, employees or agents, in respect to which indemnity may be sought against the Maker, the Lender or such other party shall promptly notify the Maker and the Maker shall assume the defense thereof, including the employment of counsel selected by the Maker and reasonably satisfactory to the Lender, the payment of all reasonable costs and expenses and the right to negotiate and consent to settlement. The Lender shall have the right, at its sole option, to employ separate counsel in any such action and to participate in the defense thereof, all at the Maker's sole cost and expense.

14. **Notices.** All notices and communications under this Note shall be in writing and shall be given by either (a) hand-delivery, (b) first class mail (postage prepaid), or (c) reliable overnight commercial courier (charges prepaid), to the addresses listed above. Notice shall be deemed to have been given and received: (i) if by hand delivery, upon delivery, (ii) if by mail, three (3) calendar days after the date first deposited in the United States mail, and (iii) if by overnight courier, on the date of actual delivery or first attempted delivery if delivery is refused. A party may change its address by giving written notice to the other party as specified herein

15. **Further Assurances.** The Maker will, at its expense, promptly and duly execute and deliver to the Lender Parties such further documents and assurances to take such further action as the Lender may from time to time request in writing in order to more effectively carry out the intent and purpose of this Note and to establish and protect the rights and remedies created or intended to be created in favor of the Lender hereunder, including without limitation, to enter into any and all documents, instruments, or amendments necessary or desirable to enforce this Note against the Maker or needed by the Lender in connection with the procurement, establishment or maintenance of a letter of credit from a bank relating to the obligations of the Maker under this Note.

16. **Partial Invalidity.** The invalidity or unenforceability of any one or more provisions of this Note shall not render any other provision invalid or unenforceable. in lieu of any invalid or unenforceable provision, there shall be added automatically a valid and enforceable provision as similar in terms to such invalid or unenforceable provision as may be possible.

17. **Counterparts; Electronic Signature Pages.** This Note may be executed in counterparts, each of which shall constitute an original and all of which together shall constitute one and the same document. This Note may be delivered by the Maker via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, *e.g.,* www.docusign.com) or other transmission method and this Note so delivered shall be deemed to have been duly and validly delivered and be valid and effective as an original for all purposes.

18. **Binding Effect.** The covenants, conditions, waivers, releases and agreements contained in this Note shall bind, and the benefits thereof shall inure to, the parties hereto and their respective heirs, executors, administrators, successors and assigns, provided, however, that this Note cannot be assigned by the Maker without the prior written consent of the Lender, and any such assignment or attempted assignment by the Maker absent such consent shall be void and of no effect with respect to the Lender.

19. **Modifications.** This Note may not be supplemented, extended, modified or terminated except by an agreement in writing signed by the party against whom enforcement of any such waiver, change, modification or discharge is sought.

20. **USA PATRIOT ACT.** The Lender hereby notifies the Maker that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56), the Lender may be required to obtain, verify, and record information that identifies the Maker, which information includes the name and address of the Maker and other information that will allow the Lender to identify the MAKER in accordance with the USA Patriot Act.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, has caused this Promissory Note to be duly executed on the day and year first written above.

**MATTERHORN AVIATION SERVICES LIMITED**

By: *Eugene O'Reilly*
A60CCB33A095485...

Name: Eugene O'Reilly

Title: Director

<u>Exhibit A</u>

<u>Description of the Aircraft</u>

**Airframe Information**

| Manufacturer | Honda Aircraft Company, LLC |
|---|---|
| Model | HA-420 |
| Serial Number | 42000160 |
| Registration Number | N193WS |

**Engine Information**

| Manufacturer | GE Honda Aero Engines |
|---|---|
| Model | HF120 |
| Serial Number 1 | 883433 |
| Serial Number 2 | 883466 |

PROMISSORY NOTE (MSN 161)

$1,500,000.00                                                                                    New York, New York
                                                                                                 January 30, 2020

      FOR VALUE RECEIVED, Matterhorn Aviation Services Limited, an Irish limited company, with a principal address of business at Embassy House, Herbert Park Lane, Ballsbridge, Dublin 4, Ireland (the "Maker"), promises to pay to the order of Honda Aircraft Company, LLC, a Delaware limited liability company with a principal address of business at 6430 Ballinger Road, Greensboro, NC 27410 USA, Attention: contracts@haci.honda.com (the "Lender"), the principal sum of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00), payable at the times hereinafter specified, together with interest, in arrears, from the date hereof on the unpaid balance from time to time outstanding and on all unpaid or deferred installments of interest, whether before or after the maturity of or default under this Note, at a rate of interest equal to two percent (2.00%) per annum.  Capitalized terms used and not otherwise defined herein shall have the meaning assigned thereto in that certain Aircraft Lease Agreement by and between the Lender, as lessee, and the Owner Trustee, as lessor, dated as of the date hereof (as may be amended, restated and/or modified from time to time, the "Lease Agreement").

**Recitals**

    A.   Lender is the manufacturer of that certain HondaJet HA-420 aircraft described on Exhibit A attached hereto (the "Aircraft");

    B.   Bank of Utah, not in its individual capacity but solely as Owner Trustee (the "Owner Trustee") under that certain Trust Agreement (the "Trust Agreement") by and between the Owner Trustee and MAS ONE USA LLC ("MAS One"), as trustor, has agreed to purchase the Aircraft from the Lender pursuant to the terms of the Purchase Agreement and Purchase Agreement Assignment (collectively, the "Purchase Documents");

    C.   The Maker is an affiliate of MAS One, the trustor under the Trust Agreement, and has agreed to enter into this Note to make certain payments required under the terms of the Purchase Documents on behalf of the Owner Trustee and MAS One as provided for below;

    D.   Lender as lessee has also agreed to lease the Aircraft from the Owner Trustee as lessor pursuant to the terms of the Lease Agreement and to sublease the Aircraft to Wing Spirit, Inc., a Hawaii corporation (the "Sublessee"), as sublessee, pursuant to the terms of that certain Aircraft Sublease Agreement by and between the Lender, as sublessor, and the Sublessee, dated as of the date hereof (as may be amended, restated and/or modified from time to time, the "Sublease Agreement," and together with the Lease Agreement, the "Lease Documents");

    E.   In connection with the execution of the Lease Agreement, the Lender has also entered into a certain Residual Value Guarantee Agreement in favor of the Owner Trustee dated as of the date hereof relating the Aircraft (as may be amended, restated and/or modified from time to time, the "Residual Value Guarantee" and together with the Lease Documents and the other documents executed by the Lender and its affiliates in connection therewith, the "Transaction Documents"), pursuant to which the Lender has agreed to guarantee the residual value of the Aircraft; and

    F.   With respect to the payment of the purchase price to be made by the Owner Trustee to Lender under terms of the Purchase Documents and notwithstanding anything to the contrary contained in the Transaction Documents or the funds flow memorandum related thereto, the Owner Trustee, MAS One, and the Maker have requested and the Lender has agreed to defer (the "Deferred Payment") of a portion of such purchase price payment in the amount of $1,500,000 until the Maturity Date, and on the Delivery Date (as such term is defined in the Lease Agreement), the Lender has agreed to make such Deferred Payment on behalf of the Maker, the Owner Trustee and MAS One in connection with the purchase by the Owner Trustee of the Aircraft subject to the terms of this Note.

NOW THEREFORE, in consideration of the foregoing premises and the mutual benefits to be derived by the Maker and its affiliate, MAS One, and the Lender from a continuing relationship under the Transaction Documents and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree:

    1. **Payments**. Notwithstanding anything in this Note or the Transaction Documents to the contrary, the entire unpaid principal balance of this Note and all accrued and unpaid interest thereon shall be due and payable on the first to occur of (i) the Base Term Expiry Date (as such term is defined in the Lease Agreement)

#59637964

related to the Aircraft, (ii) the termination of the Lease Agreement under the terms thereof, or (iii) October 31, 2020 (collectively, the "Maturity Date"). THE MAKER AGREES AND ACKNOWLEDGES THAT (1) THE LOAN MADE TO THE MAKER UNDER THIS NOTE IS NOT A FULLY AMORTIZING LOAN; AND (2) A SUBSTANTIAL PRINCIPAL BALANCE OR BALLOON PAYMENT OF PRINCIPAL SHALL BE DUE AND PAYABLE ON THE MATURITY DATE OF THIS NOTE.

2. **Interest Computation.** All payments under this Note shall be made in immediately available funds and shall be credited first to accrued interest then due, thereafter to unpaid principal, and then to other charges, fees, costs, and expenses payable by the Maker under this Note in such order and amounts as the Lender may determine in its sole and absolute discretion. If any payment of interest is not made when due, at the option of the Lender, such interest payment shall bear interest at the same rate as principal from and after the due date of the interest payment. Principal and interest shall be payable only in lawful money of the United States of America. The receipt of any check or other item of payment (a "payment item") by the Lender, at its option, shall not be considered a payment until such payment item is honored when presented for payment at the drawee bank or institution, and the Lender, at its option, may delay the credit of such payment until such payment item is so honored. Notwithstanding anything to the contrary contained in this Note, interest at the rates provided for in this Note shall be computed on the basis of a three hundred sixty (360) day year for the actual number of days during which the principal balance of this Note is outstanding. The Maker acknowledges and agrees that the calculation of interest on the basis described in the immediately preceding sentence may result in the accrual and payment of interest in amounts greater than those which would be payable if interest were calculated on the basis of a three hundred sixty-five (365) day year.

3. **Prepayment.** The Maker shall have the right to prepay all or part of the outstanding principal balance of this Note at any time without payment to the Lender of a prepayment fee or charge.

4. **After Maturity/Default Rate of Interest.** From and after either (a) an Event of Default (as such term is defined below); or (b) the maturity of this Note (whether the stated maturity date of this Note or the maturity date resulting from the Lender's acceleration of unpaid principal and interest), then in either of such circumstances, interest on the unpaid principal balance of this Note shall accrue at a rate equal to two percent (2.00%) per annum above the otherwise applicable interests rate.

5. **Events of Default.** The occurrence of any one or more of the following events will constitute an Event of Default hereunder: (a) Nonpayment of any installment of principal and/or interest due under this Note when it shall become due and payable (no prior demand therefor being necessary); (b) (i) The insolvency or inability of the Maker to pay its debts as they mature; (ii) the appointment of a receiver, trustee, custodian or other fiduciary, for, or for any of the property of, the Maker; (iii) the making of any assignment for the benefit of creditors, or the making of or entering into a trust mortgage or deed or other instrument or similar import for the benefit of creditors, by the Maker; or (iv) the convening of a meeting of the creditors, or the selection of a committee representing the creditors of the Maker; (c) The filing of a petition, complaint, motion or other pleading seeking relief under any receivership, insolvency, or debtor relief law, or seeking any readjustment of indebtedness, reorganization, composition, extension or any similar type of relief, or the filing of a petition, complaint, or motion under any chapter of the federal bankruptcy code, 11 U.S.C. 101, et. seq., as the same now exists or may hereafter be amended (the "Bankruptcy Code"), by the Maker; (d) The filing of a petition, complaint, motion or other pleading seeking any relief under any receivership, insolvency, or debtor relief law, or under any chapter of the Bankruptcy Code, or seeking any readjustment of indebtedness, reorganization, composition, extension or any similar type of relief, or the entry of any order for relief under any chapter of the Bankruptcy Code, against, the Maker; provided, however, that if the Maker shall immediately notify the Lender in writing of the filing of any such petition, complaint, motion or other pleading against the Maker and shall provide evidence satisfactory to the Lender that the Maker has in good faith and within 10 days after the filing of any such petition, complaint, motion or other pleading filed an answer thereto contesting same, then there shall be no Event of Default under this subparagraph (d) until the earliest of (i) the entry of an order for relief or a judgment under any proceedings referred to in this subparagraph (d), (ii) the appointment of a receiver, trustee, custodian or other fiduciary in any such proceeding, or (iii) the expiration of a period of 30 days, at the end of which such petition, complaint, motion or other pleading remains undismissed; (e) The entry of any judgment against, or the attachment or garnishment of any of the property, goods or credits of, the Maker which remains unpaid, unstayed, undismissed or unbonded for a period of 30 days; or if any foreclosure is instituted (by judicial proceedings, by publication of notice pursuant to a power of sale or otherwise) against the Maker under any mortgage, deed of trust or security agreement granted by the Maker and is not dismissed or terminated for a period of 15 days; (f) The dissolution, liquidation or termination of existence of the Maker or a sale of substantially all of the assets of the Maker out of the ordinary course of business; or (g) a breach by the Maker of any other term or condition of this Note.

6. **Remedies.** If an Event of Default occurs and is continuing, the Lender may exercise any right, power or remedy permitted by law or as set forth herein, including, without limitation, the right to declare the entire unpaid principal amount hereof and all interest accrued hereon and such principal, interest and other sums shall thereupon become, immediately due and payable.

7. **Waiver.** The Maker waives demand, notice (except to the extent expressly required herein), presentment, protest, demand for payment, notice of dishonor, notice of protest and diligence of collection of this Note. The Maker consents to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Lender with respect to the payment or other provisions of this Note. The liability of the Maker hereunder shall be absolute and unconditional and without regard to the liability of any other party hereto, and the Maker agrees that makers, endorsers, guarantors and sureties may be added or released without notice and without affecting the Maker's liability hereunder.

8. **Late Charge.** If any installment of interest and/or payment of principal under this Note is not paid within ten (10) days after the date on which it is due, the Maker shall immediately pay a late charge equal to two percent (2.00%) of such installment to the Lender to compensate the Lender for administrative costs and expenses incurred in connection with such late payment. The Maker agrees that the actual damages suffered by the Lender because of any late installment payment are extremely difficult and impracticable to ascertain, and the late charge described in this Section represents a reasonable attempt to fix such damages under the circumstances existing at the time this Note is executed. The Lender's acceptance of any late charge shall not constitute a waiver of any of the terms of this Note and shall not affect the Lender's right to enforce any of its rights and remedies against any person liable for payment of this Note.

9. **Application of Payments.** Upon the occurrence and during the continuation of any Event of Default, the Lender, at its option, shall have the right to apply all payments made under this Note to principal, interest, and other charges, fees, costs and expenses payable by the Maker under this Note in such order and amounts as the Lender may determine in its sole and absolute discretion.

10. **Modifications; Loss of Note.** No modification or waiver by the Lender of any of the terms of this Note shall be valid or binding on Lender unless such modification or waiver is in writing and signed by the Lender. If this Note is lost, stolen, or destroyed, upon the Maker's receipt of a reasonably satisfactory indemnification agreement executed by the Lender, or if this Note is mutilated, upon the Lender's surrender of the mutilated Note to the Maker, the Maker shall execute and deliver to the Lender a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

11. **Applicable Law; Successors.** This Note shall be governed by and interpreted in accordance with the laws of the State of New York (determined without regard to its conflicts of law principles other than Section 5-1401 and Section 5-1402 of the New York General Obligations Law). The Lender and the Maker agree that the courts of the State of New York and Federal District Court located in New York County, New York, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Note, regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or violation of any governmental requirements. The Maker irrevocably consents to the personal jurisdiction of such courts and to such venue. The Maker waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

12. **Setoff.** The Maker grants to the Lender a right of setoff in all property of the Maker, now or hereafter in the possession of the Maker, as security for the payment of this Note and any other liabilities of the Maker to the Lender, which right of setoff shall be enforceable by the Lender on the Maturity Date or at any time after and during the continuance of an Event of Default hereunder and subject to all provisions of this Note, as if such property were specifically pledged hereunder. For the avoidance of doubt and notwithstanding anything to the contrary in this Note, the Transaction Documents or any other documents executed in connection therewith, the Lender shall have the right to exercise its setoff right with respect to any payment that the Lender must make to the Maker, the Owner Trustee or MAS One under the Transaction Documents, including, without limitation, the Lease Documents or the Residual Value Guarantees, or any payment that an affiliate of the Lender must make to the Maker, the Owner Trustee or MAS One under the terms of the Transaction Documents.

13. **Indemnification.** The Maker hereby indemnifies and agrees to defend and hold harmless the Lender, its officers, employees and agents, from and against any and all losses, damages, or liabilities and from any suits, claims or demands, including reasonable attorneys' fees incurred in investigating or defending such

claim, suffered by any of them and caused by, arising out of, or in any way connected with this Note or the transactions contemplated therein (unless determined by a final judgment of a court of competent jurisdiction to have been caused solely by the gross negligence or willful misconduct of any of the indemnified parties). If any action shall be brought against the Lender, its officers, employees or agents, in respect to which indemnity may be sought against the Maker, the Lender or such other party shall promptly notify the Maker and the Maker shall assume the defense thereof, including the employment of counsel selected by the Maker and reasonably satisfactory to the Lender, the payment of all reasonable costs and expenses and the right to negotiate and consent to settlement. The Lender shall have the right, at its sole option, to employ separate counsel in any such action and to participate in the defense thereof, all at the Maker's sole cost and expense.

14. **Notices.** All notices and communications under this Note shall be in writing and shall be given by either (a) hand-delivery, (b) first class mail (postage prepaid), or (c) reliable overnight commercial courier (charges prepaid), to the addresses listed above. Notice shall be deemed to have been given and received: (i) if by hand delivery, upon delivery, (ii) if by mail, three (3) calendar days after the date first deposited in the United States mail, and (iii) if by overnight courier, on the date of actual delivery or first attempted delivery if delivery is refused. A party may change its address by giving written notice to the other party as specified herein

15. **Further Assurances.** The Maker will, at its expense, promptly and duly execute and deliver to the Lender Parties such further documents and assurances to take such further action as the Lender may from time to time request in writing in order to more effectively carry out the intent and purpose of this Note and to establish and protect the rights and remedies created or intended to be created in favor of the Lender hereunder, including without limitation, to enter into any and all documents, instruments, or amendments necessary or desirable to enforce this Note against the Maker or needed by the Lender in connection with the procurement, establishment or maintenance of a letter of credit from a bank relating to the obligations of the Maker under this Note.

16. **Partial Invalidity.** The invalidity or unenforceability of any one or more provisions of this Note shall not render any other provision invalid or unenforceable. in lieu of any invalid or unenforceable provision, there shall be added automatically a valid and enforceable provision as similar in terms to such invalid or unenforceable provision as may be possible.

17. **Counterparts; Electronic Signature Pages.** This Note may be executed in counterparts, each of which shall constitute an original and all of which together shall constitute one and the same document. This Note may be delivered by the Maker via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, *e.g.*, www.docusign.com) or other transmission method and this Note so delivered shall be deemed to have been duly and validly delivered and be valid and effective as an original for all purposes.

18. **Binding Effect.** The covenants, conditions, waivers, releases and agreements contained in this Note shall bind, and the benefits thereof shall inure to, the parties hereto and their respective heirs, executors, administrators, successors and assigns, provided, however, that this Note cannot be assigned by the Maker without the prior written consent of the Lender, and any such assignment or attempted assignment by the Maker absent such consent shall be void and of no effect with respect to the Lender.

19. **Modifications.** This Note may not be supplemented, extended, modified or terminated except by an agreement in writing signed by the party against whom enforcement of any such waiver, change, modification or discharge is sought.

20. **USA PATRIOT ACT.** The Lender hereby notifies the Maker that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56), the Lender may be required to obtain, verify, and record information that identifies the Maker, which information includes the name and address of the Maker and other information that will allow the Lender to identify the MAKER in accordance with the USA Patriot Act.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, has caused this Promissory Note to be duly executed on the day and year first written above.

**MATTERHORN AVIATION SERVICES LIMITED**

By: _/s/ Eugene O'Reilly_ (DocuSigned by: A60CC833A095488)

Name: Eugene O'Reilly

Title: Director

Exhibit A

Description of the Aircraft

**Airframe Information**

| Manufacturer | Honda Aircraft Company, LLC |
|---|---|
| Model | HA-420 |
| Serial Number | 42000161 |
| Registration Number | N551WS |

**Engine Information**

| Manufacturer | GE Honda Aero Engines |
|---|---|
| Model | HF120 |
| Serial Number 1 | 883441 |
| Serial Number 2 | 883434 |

PROMISSORY NOTE (MSN 118)

$1,500,000.00                                                                                    New York, New York
                                                                                                  January 30, 2020

        FOR VALUE RECEIVED, Matterhorn Aviation Services Limited, an Irish limited company, with a principal address of business at Embassy House, Herbert Park Lane, Ballsbridge, Dublin 4, Ireland (the "<u>Maker</u>"), promises to pay to the order of Honda Aircraft Company, LLC, a Delaware limited liability company with a principal address of business at 6430 Ballinger Road, Greensboro, NC 27410 USA, Attention: contracts@haci.honda.com (the "<u>Lender</u>"), the principal sum of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00), payable at the times hereinafter specified, together with interest, in arrears, from the date hereof on the unpaid balance from time to time outstanding and on all unpaid or deferred installments of interest, whether before or after the maturity of or default under this Note, at a rate of interest equal to two percent (2.00%) per annum.  Capitalized terms used and not otherwise defined herein shall have the meaning assigned thereto in that certain Aircraft Lease Agreement by and between the Lender, as lessee, and the Owner Trustee, as lessor, dated as of the date hereof (as may be amended, restated and/or modified from time to time, the "<u>Lease Agreement</u>").

### **Recitals**

A. Lender is the manufacturer of that certain HondaJet HA-420 aircraft described on <u>Exhibit A</u> attached hereto (the "<u>Aircraft</u>");

B. Bank of Utah, not in its individual capacity but solely as Owner Trustee (the "<u>Owner Trustee</u>") under that certain Trust Agreement (the "<u>Trust Agreement</u>") by and between the Owner Trustee and MAS ONE USA LLC ("<u>MAS One</u>"), as trustor, has agreed to purchase the Aircraft from the Lender pursuant to the terms of the Purchase Agreement and Purchase Agreement Assignment (collectively, the "<u>Purchase Documents</u>");

C. The Maker is an affiliate of MAS One, the trustor under the Trust Agreement, and has agreed to enter into this Note to make certain payments required under the terms of the Purchase Documents on behalf of the Owner Trustee and MAS One as provided for below;

D. Lender as lessee has also agreed to lease the Aircraft from the Owner Trustee as lessor pursuant to the terms of the Lease Agreement and to sublease the Aircraft to Wing Spirit, Inc., a Hawaii corporation (the "<u>Sublessee</u>"), as sublessee, pursuant to the terms of that certain Aircraft Sublease Agreement by and between the Lender, as sublessor, and the Sublessee, dated as of the date hereof (as may be amended, restated and/or modified from time to time, the "<u>Sublease Agreement</u>," and together with the Lease Agreement, the "<u>Lease Documents</u>");

E. In connection with the execution of the Lease Agreement, the Lender has also entered into a certain Residual Value Guarantee Agreement in favor of the Owner Trustee dated as of the date hereof relating the Aircraft (as may be amended, restated and/or modified from time to time, the "<u>Residual Value Guarantee</u>" and together with the Lease Documents and the other documents executed by the Lender and its affiliates in connection therewith, the "<u>Transaction Documents</u>"), pursuant to which the Lender has agreed to guarantee the residual value of the Aircraft; and

F. With respect to the payment of the purchase price to be made by the Owner Trustee to Lender under terms of the Purchase Documents and notwithstanding anything to the contrary contained in the Transaction Documents or the funds flow memorandum related thereto, the Owner Trustee, MAS One, and the Maker have requested and the Lender has agreed to defer (the "<u>Deferred Payment</u>") of a portion of such purchase price payment in the amount of $1,500,000 until the Maturity Date, and on the Delivery Date (as such term is defined in the Lease Agreement), the Lender has agreed to make such Deferred Payment on behalf of the Maker, the Owner Trustee and MAS One in connection with the purchase by the Owner Trustee of the Aircraft subject to the terms of this Note.

NOW THEREFORE, in consideration of the foregoing premises and the mutual benefits to be derived by the Maker and its affiliate, MAS One, and the Lender from a continuing relationship under the Transaction Documents and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree:

1. **Payments.**  Notwithstanding anything in this Note or the Transaction Documents to the contrary, the entire unpaid principal balance of this Note and all accrued and unpaid interest thereon shall be due and payable on the first to occur of (i) the Base Term Expiry Date (as such term is defined in the Lease Agreement)

#59637958

related to the Aircraft, (ii) the termination of the Lease Agreement under the terms thereof, or (iii) October 31, 2020 (collectively, the "Maturity Date"). THE MAKER AGREES AND ACKNOWLEDGES THAT (1) THE LOAN MADE TO THE MAKER UNDER THIS NOTE IS NOT A FULLY AMORTIZING LOAN; AND (2) A SUBSTANTIAL PRINCIPAL BALANCE OR BALLOON PAYMENT OF PRINCIPAL SHALL BE DUE AND PAYABLE ON THE MATURITY DATE OF THIS NOTE.

2. **Interest Computation.** All payments under this Note shall be made in immediately available funds and shall be credited first to accrued interest then due, thereafter to unpaid principal, and then to other charges, fees, costs, and expenses payable by the Maker under this Note in such order and amounts as the Lender may determine in its sole and absolute discretion. If any payment of interest is not made when due, at the option of the Lender, such interest payment shall bear interest at the same rate as principal from and after the due date of the interest payment. Principal and interest shall be payable only in lawful money of the United States of America. The receipt of any check or other item of payment (a "payment item") by the Lender, at its option, shall not be considered a payment until such payment item is honored when presented for payment at the drawee bank or institution, and the Lender, at its option, may delay the credit of such payment until such payment item is so honored. Notwithstanding anything to the contrary contained in this Note, interest at the rates provided for in this Note shall be computed on the basis of a three hundred sixty (360) day year for the actual number of days during which the principal balance of this Note is outstanding. The Maker acknowledges and agrees that the calculation of interest on the basis described in the immediately preceding sentence may result in the accrual and payment of interest in amounts greater than those which would be payable if interest were calculated on the basis of a three hundred sixty-five (365) day year.

3. **Prepayment.** The Maker shall have the right to prepay all or part of the outstanding principal balance of this Note at any time without payment to the Lender of a prepayment fee or charge.

4. **After Maturity/Default Rate of Interest.** From and after either (a) an Event of Default (as such term is defined below); or (b) the maturity of this Note (whether the stated maturity date of this Note or the maturity date resulting from the Lender's acceleration of unpaid principal and interest), then in either of such circumstances, interest on the unpaid principal balance of this Note shall accrue at a rate equal to two percent (2.00%) per annum above the otherwise applicable interests rate.

5. **Events of Default.** The occurrence of any one or more of the following events will constitute an Event of Default hereunder: (a) Nonpayment of any installment of principal and/or interest due under this Note when it shall become due and payable (no prior demand therefor being necessary); (b) (i) The insolvency or inability of the Maker to pay its debts as they mature; (ii) the appointment of a receiver, trustee, custodian or other fiduciary, for, or for any of the property of, the Maker; (iii) the making of any assignment for the benefit of creditors, or the making of or entering into a trust mortgage or deed or other instrument or similar import for the benefit of creditors, by the Maker; or (iv) the convening of a meeting of the creditors, or the selection of a committee representing the creditors of the Maker; (c) The filing of a petition, complaint, motion or other pleading seeking relief under any receivership, insolvency, or debtor relief law, or seeking any readjustment of indebtedness, reorganization, composition, extension or any similar type of relief, or the filing of a petition, complaint, or motion under any chapter of the federal bankruptcy code, 11 U.S.C. 101, et. seq., as the same now exists or may hereafter be amended (the "Bankruptcy Code"), by the Maker; (d) The filing of a petition, complaint, motion or other pleading seeking any relief under any receivership, insolvency, or debtor relief law, or under any chapter of the Bankruptcy Code, or seeking any readjustment of indebtedness, reorganization, composition, extension or any similar type of relief, or the entry of any order for relief under any chapter of the Bankruptcy Code, against, the Maker; provided, however, that if the Maker shall immediately notify the Lender in writing of the filing of any such petition, complaint, motion or other pleading against the Maker and shall provide evidence satisfactory to the Lender that the Maker has in good faith and within 10 days after the filing of any such petition, complaint, motion or other pleading filed an answer thereto contesting same, then there shall be no Event of Default under this subparagraph (d) until the earliest of (i) the entry of an order for relief or a judgment under any proceedings referred to in this subparagraph (d), (ii) the appointment of a receiver, trustee, custodian or other fiduciary in any such proceeding, or (iii) the expiration of a period of 30 days, at the end of which such petition, complaint, motion or other pleading remains undismissed; (e) The entry of any judgment against, or the attachment or garnishment of any of the property, goods or credits of, the Maker which remains unpaid, unstayed, undismissed or unbonded for a period of 30 days; or if any foreclosure is instituted (by judicial proceedings, by publication of notice pursuant to a power of sale or otherwise) against the Maker under any mortgage, deed of trust or security agreement granted by the Maker and is not dismissed or terminated for a period of 15 days; (f) The dissolution, liquidation or termination of existence of the Maker or a sale of substantially all of the assets of the Maker out of the ordinary course of business; or (g) a breach by the Maker of any other term or condition of this Note.

6. **Remedies.** If an Event of Default occurs and is continuing, the Lender may exercise any right, power or remedy permitted by law or as set forth herein, including, without limitation, the right to declare the entire unpaid principal amount hereof and all interest accrued hereon and such principal, interest and other sums shall thereupon become, immediately due and payable.

7. **Waiver.** The Maker waives demand, notice (except to the extent expressly required herein), presentment, protest, demand for payment, notice of dishonor, notice of protest and diligence of collection of this Note. The Maker consents to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Lender with respect to the payment or other provisions of this Note. The liability of the Maker hereunder shall be absolute and unconditional and without regard to the liability of any other party hereto, and the Maker agrees that makers, endorsers, guarantors and sureties may be added or released without notice and without affecting the Maker's liability hereunder.

8. **Late Charge.** If any installment of interest and/or payment of principal under this Note is not paid within ten (10) days after the date on which it is due, the Maker shall immediately pay a late charge equal to two percent (2.00%) of such installment to the Lender to compensate the Lender for administrative costs and expenses incurred in connection with such late payment. The Maker agrees that the actual damages suffered by the Lender because of any late installment payment are extremely difficult and impracticable to ascertain, and the late charge described in this Section represents a reasonable attempt to fix such damages under the circumstances existing at the time this Note is executed. The Lender's acceptance of any late charge shall not constitute a waiver of any of the terms of this Note and shall not affect the Lender's right to enforce any of its rights and remedies against any person liable for payment of this Note.

9. **Application of Payments.** Upon the occurrence and during the continuation of any Event of Default, the Lender, at its option, shall have the right to apply all payments made under this Note to principal, interest, and other charges, fees, costs and expenses payable by the Maker under this Note in such order and amounts as the Lender may determine in its sole and absolute discretion.

10. **Modifications; Loss of Note.** No modification or waiver by the Lender of any of the terms of this Note shall be valid or binding on Lender unless such modification or waiver is in writing and signed by the Lender. If this Note is lost, stolen, or destroyed, upon the Maker's receipt of a reasonably satisfactory indemnification agreement executed by the Lender, or if this Note is mutilated, upon the Lender's surrender of the mutilated Note to the Maker, the Maker shall execute and deliver to the Lender a new promissory note which is identical in form and content to this Note to replace the lost, stolen, destroyed or mutilated Note.

11. **Applicable Law; Successors.** This Note shall be governed by and interpreted in accordance with the laws of the State of New York (determined without regard to its conflicts of law principles other than Section 5-1401 and Section 5-1402 of the New York General Obligations Law). The Lender and the Maker agree that the courts of the State of New York and Federal District Court located in New York County, New York, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of this Note, regardless of whether or not any claim, counterclaim or defense in any such action or proceeding is characterized as arising out of fraud, negligence, intentional misconduct, breach of contract or fiduciary duty, or violation of any governmental requirements. The Maker irrevocably consents to the personal jurisdiction of such courts and to such venue. The Maker waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

12. **Setoff.** The Maker grants to the Lender a right of setoff in all property of the Maker, now or hereafter in the possession of the Maker, as security for the payment of this Note and any other liabilities of the Maker to the Lender, which right of setoff shall be enforceable by the Lender on the Maturity Date or at any time after and during the continuance of an Event of Default hereunder and subject to all provisions of this Note, as if such property were specifically pledged hereunder. For the avoidance of doubt and notwithstanding anything to the contrary in this Note, the Transaction Documents or any other documents executed in connection therewith, the Lender shall have the right to exercise its setoff right with respect to any payment that the Lender must make to the Maker, the Owner Trustee or MAS One under the Transaction Documents, including, without limitation, the Lease Documents or the Residual Value Guarantees, or any payment that an affiliate of the Lender must make to the Maker, the Owner Trustee or MAS One under the terms of the Transaction Documents.

13. **Indemnification.** The Maker hereby indemnifies and agrees to defend and hold harmless the Lender, its officers, employees and agents, from and against any and all losses, damages, or liabilities and from any suits, claims or demands, including reasonable attorneys' fees incurred in investigating or defending such

claim, suffered by any of them and caused by, arising out of, or in any way connected with this Note or the transactions contemplated therein (unless determined by a final judgment of a court of competent jurisdiction to have been caused solely by the gross negligence or willful misconduct of any of the indemnified parties). If any action shall be brought against the Lender, its officers, employees or agents, in respect to which indemnity may be sought against the Maker, the Lender or such other party shall promptly notify the Maker and the Maker shall assume the defense thereof, including the employment of counsel selected by the Maker and reasonably satisfactory to the Lender, the payment of all reasonable costs and expenses and the right to negotiate and consent to settlement. The Lender shall have the right, at its sole option, to employ separate counsel in any such action and to participate in the defense thereof, all at the Maker's sole cost and expense.

14. **Notices**.  All notices and communications under this Note shall be in writing and shall be given by either (a) hand-delivery, (b) first class mail (postage prepaid), or (c) reliable overnight commercial courier (charges prepaid), to the addresses listed above. Notice shall be deemed to have been given and received: (i) if by hand delivery, upon delivery, (ii) if by mail, three (3) calendar days after the date first deposited in the United States mail, and (iii) if by overnight courier, on the date of actual delivery or first attempted delivery if delivery is refused. A party may change its address by giving written notice to the other party as specified herein

15. **Further Assurances**.   The Maker will, at its expense, promptly and duly execute and deliver to the Lender Parties such further documents and assurances to take such further action as the Lender may from time to time request in writing in order to more effectively carry out the intent and purpose of this Note and to establish and protect the rights and remedies created or intended to be created in favor of the Lender hereunder, including without limitation, to enter into any and all documents, instruments, or amendments necessary or desirable to enforce this Note against the Maker or needed by the Lender in connection with the procurement, establishment or maintenance of a letter of credit from a bank relating to the obligations of the Maker under this Note.

16. **Partial Invalidity**. The invalidity or unenforceability of any one or more provisions of this Note shall not render any other provision invalid or unenforceable. in lieu of any invalid or unenforceable provision, there shall be added automatically a valid and enforceable provision as similar in terms to such invalid or unenforceable provision as may be possible.

17. **Counterparts; Electronic Signature Pages**.  This Note may be executed in counterparts, each of which shall constitute an original and all of which together shall constitute one and the same document. This Note may be delivered by the Maker via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and this Note so delivered shall be deemed to have been duly and validly delivered and be valid and effective as an original for all purposes.

18. **Binding Effect.** The covenants, conditions, waivers, releases and agreements contained in this Note shall bind, and the benefits thereof shall inure to, the parties hereto and their respective heirs, executors, administrators, successors and assigns, provided, however, that this Note cannot be assigned by the Maker without the prior written consent of the Lender, and any such assignment or attempted assignment by the Maker absent such consent shalt be void and of no effect with respect to the Lender.

19. **Modifications**.  This Note may not be supplemented, extended, modified or terminated except by an agreement in writing signed by the party against whom enforcement of any such waiver, change, modification or discharge is sought.

20. **USA PATRIOT ACT**. The Lender hereby notifies the Maker that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56), the Lender may be required to obtain, verify, and record information that identifies the Maker, which information includes the name and address of the Maker and other information that will allow the Lender to identify the MAKER in accordance with the USA Patriot Act.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, has caused this Promissory Note to be duly executed on the day and year first written above.

**MATTERHORN AVIATION SERVICES LIMITED**

By: _Eugene O'Reilly_
    A60CC633A095485...

Name: Eugene O'Reilly

Title: Director

Exhibit A

Description of the Aircraft

**Airframe Information**

| Manufacturer | Honda Aircraft Company, LLC |
|---|---|
| Model | HA-420 |
| Serial Number | 42000118 |
| Registration Number | N996WS |

**Engine Information**

| Manufacturer | GE Honda Aero Engines |
|---|---|
| Model | HF120 |
| Serial Number 1 | 883351 |
| Serial Number 2 | 883352 |