# EXHIBIT K

Bank of Utah's December 16 Lease Default and Termination Notice

<u>**Via Electronic Mail & Overnight Delivery**</u>

Honda Aircraft Company, LLC
6430 Ballinger Road
Greensboro, NC 27410 USA
Attention: contracts@haci.honda.com

Re: *Lease Agreement dated January 31, 2020*

December 16, 2020

Ladies and Gentlemen:

    Reference is made to (i) that certain Lease Agreement, dated as of January 31, 2020, as amended by that certain Rent Deferral Agreement dated as of April 15, 2020 and that certain Second Amendment to Aircraft Lease Agreement dated as of November 19, 2020 (and as at any time further amended, modified, restated, or supplemented, the "<u>Lease Agreement</u>"), by and between Bank of Utah, not in its individual capacity but solely as Owner Trustee (in such capacity, the "<u>Owner Trustee</u>") and the Lessee and (ii) each of the other Operative Documents. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Lease Agreement (and, if not defined therein, the meanings ascribed to such terms in the other Operative Documents, as applicable).

1. **Events of Default**

(a) In respect of the Aircraft with manufacturers serial numbers 42000155, 42000156, 42000073, 42000111, 42000118, 42000160 and 42000161 (the "<u>Currently Leased Aircraft</u>"), we refer to Section 5(a) of the Lease Agreement, which provides that the Lessee is under an obligation to pay to the Owner Trustee a payment with respect to each Aircraft, on the First Basic Payment Date if applicable and on each applicable Basic Payment Date thereafter, to and including the Base Term Expiry Date, in an amount equal to the Basic Payment for such Aircraft.

(b) Lessee has failed to comply with Section 5(a) of the Lease Agreement in respect of payments which are currently past due, in the amounts of $394,3261.10, $394,582.17, $485,294.60, $485,550.68, $485,806.75, and $486,062.83, which include Basic Payments which were due on July 15, 2020, August 15, 2020, September 15, 2020, October 15, 2020, November 15, 2020, and December 15, 2020 respectively, with respect to the Currently Leased Aircraft (the "<u>Lease Basic Payments</u>") as well as past due instalment payments of the Deferred Rent Amount (the "<u>Deferred Rent Instalment Payments</u>", together with the Lease Basic Payments, the "<u>Past Due Lease Payments</u>").

(c) As a result of the Past Due Lease Payments not being paid when due, an Event of Default has occurred and is continuing under Section 24(a) of the Lease Agreement.

(d) As a result of Lessee's failure to perform its obligations pursuant to the Purchase Agreement to cause to be delivered to the Lessor the Aircraft other than the Currently Leased Aircraft and pursuant to Section 1 of the Lease Agreement to lease such Aircraft from the Lessor pursuant thereto and its purported repudiation of the Lease in respect of any additional Aircraft required to be delivered by Lessee thereunder, which has been stated by Lessee in

recent phone calls and emails from Lessee's Chief Financial Officer, Jason Marrone, as well as internal legal counsel at Lessee (the "Lease Repudiation"), an Event of Default has occurred and is continuing under Sections 24(d), 24(f) and 24(k) of the Lease Agreement.

2. **Demand for Payment of Default Payment Amount**

Accordingly, pursuant to Section 25(a) of the Lease Agreement, due to the occurrence and continuation of the aforementioned Events of Default, Lessor hereby declares the Lease Agreement to be in default and hereby makes a written demand on Lessee for the payment in full of the Default Payment Amount (as calculated pursuant to Section 25(a) of the Lease Agreement) **by 5:00pm EST on Friday, December 18, 2020**. Such Default Payment Amount is equal to **$111,439,607.55.** Such amount excludes additional fees and expenses, including legal fees due from Lessee to counsel to Trustor and Lender and fees owed to Seraph Aviation Management Limited in relation to the termination of the Lease Agreement (such amount, $1,400,000) but includes the amount of principal and interest due to Lender from Lessee under the Lease Agreement, equal to $30,121,966.33 (including a prepayment penalty amount of $2,985,059.75).

We remind you that your payment obligations under the Lease, as expressly set forth in Section 11 of the Lease (The Lessee's Payment Obligations), are absolute and unconditional under all circumstances and not subject to any abatements whatsoever. We also call your attention to Section 23 of the Lease Agreement (Lessee Acknowledgement and Agreement), whereby Lessee has agreed to pay directly to Lender all amounts owed by Lessee under the Lease Agreement.

We are, under separate cover, demanding that American Honda Motor Co., Inc. (as Guarantor and Parent Guarantor) immediately satisfy all of its obligations to Lessor under the Guaranty and the Honda Parent Guarantees, including, but not limited to, the obligation to pay the Lessor the Default Payment Amount referenced above.

3. **Cancellation of Lease Agreement**

Additionally, due to the occurrence and continuation of such Events of Default and pursuant to Section 25(b)(ii) of the Lease Agreement, Owner Trustee, on behalf of Lessor, hereby cancels the Lease Agreement and terminates Lessor's obligations thereunder, effectively immediately. Pursuant to Section 25(b)(ii) of the Lease Agreement, Lessee's right to use the Aircraft or any part thereof is hereby terminated and Lessee remains liable under the Lease Agreement in accordance with its terms.

4. **Reservation of Rights**

(a) The Owner Trustee is entitled to exercise all of its respective rights and remedies under the Lease Agreement, the Operative Documents and/or under Applicable Law including, without limitation, the right to take legal action to enforce the obligations of the Lessee to pay all sums due under the Lease Agreement and/or to claim damages for breach of the Lease Agreement, to take possession of each Currently Leased Aircraft, or to require the redelivery of each Currently Leased Aircraft.

(b) This letter is served without prejudice to any of the Owner Trustee's rights and remedies under the Lease Agreement, the Operative Documents and/or under Applicable Law, including, but not limited to, all remedies as a lessor and/or secured creditor in default under

Articles 2A and 9, as applicable, of the New York UCC, all of which rights and remedies are specifically reserved without prejudice to the Owner Trustee's continuing obligations under the Lease Agreement and the Operative Documents, including, without limitation, their obligations to insure, repair and maintain each Aircraft, all of which remain in full force and effect.

(c) The rights of the Owner Trustee:

   (i) are cumulative and not exclusive of any rights or remedies provided by law;

   (ii) may be exercised as often as necessary;

   (iii) may be waived only in writing and specifically; and

   (iv) shall not be impaired, waived or precluded by delay or omission in exercising any right, power or privilege available under the Operative Documents or otherwise available to the Owner Trustee under law.

(d) For the avoidance of doubt, this letter is not intended to provide a comprehensive list or description of the Events of Default that may currently be continuing under the Lease Agreement, including, but not limited to, in relation to the Lease Repudiation, and all of the Owner Trustee's rights and remedies under the Operative Documents in respect of any failure to pay any additional amounts due under the Lease Agreement, are fully reserved.

(e) Neither this letter, nor any other discussions or correspondence that any person may engage in with any party concerning this letter or any defaults, shall be in any way construed as a waiver of any rights, a course of dealing or an extension of any grace period that may be available.

(f) Please note that the Events of Default under the Lease Agreement as described in this letter are not meant to be exhaustive of all defaults and Events of Default that may have occurred under the Lease Agreement, the Guaranty, the Parent Guarantee, the Purchase Agreements or any other Operative Documents as of the date of this letter or may occur with the passage of time, giving of notice, or both, and there may be additional defaults and Events of Default under the Operative Documents as of the date of this letter. Owner Trustee does not waive or agree to forbear in the exercise of any rights or remedies against HAC or the Guarantor in connection with the Events of Default or any other default or Events of Default under the Operative Documents.

(g) Lessor further reserves and preserves all rights and remedies available to it in connection with the Lease Agreement and the other Operative Documents and at law or in equity, including, without limitation, the right to charge interest at the default rate set forth in the Lease. Nothing contained herein is intended to constitute a release, waiver, limitation, or modification of the foregoing. The acceptance by Lessor of any partial payment of the obligations due and owing to Lessor under the Operative Documents shall not be deemed a waiver of any default or Event of Default under the Operative Documents (including the Events of Default identified herein), a cure of any existing default under the Operative Documents or a limitation of any of Lessor's rights reserved herein as to the full amount of any unpaid balance. Any delay or forbearance by Lessor in the enforcement or pursuit of any of its rights and remedies under the Lease Agreement, Guaranty, Parent Guarantees or any other Operative Document or applicable law shall not constitute a waiver thereof, nor

shall it be a bar to the exercise of Lessor's rights or remedies at a later date. Owner Trustee will continue to strictly construe and enforce the express terms of the Lease Agreement, the Guaranty, the Parent Guarantees and all other Operative Documents.

(h)  This letter is designated an Operative Document.

(i)  THIS LETTER SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, INCLUDING SECTION 5-1401 AND SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, BUT EXCLUDING TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ALL OTHER CONFLICTS OF LAWS PRINCIPLES AND CHOICE OF LAW RULES OF THE STATE OF NEW YORK.

*[Signature page to follow]*

Regards,

**BANK OF UTAH**, not in its individual capacity, but solely as Owner Trustee of Matterhorn HondaJet Trust 1 (as Lessor)

By: _____
Name: Joseph H. Pugsley
Title: Vice President

**APPLE BANK FOR SAVINGS**, as Lender

By: *Dana MacKinnon*
Name: Dana MacKinnon
Title: Senior Vice President

cc:

Honda Aircraft Company, LLC, as Residual Value Guarantor
6430 Ballinger Road
Greensboro, NC 27410 USA
Attention: contracts@haci.honda.com

American Honda Motor Co., Inc., as Guarantor
1919 Torrance Blvd
Torrance, CA 90501 USA
Attention: Mike Ryan
Email: mike_ryan@ahm.honda.com

Mayer Brown LLP, Counsel to Trustor and Lender
1221 Avenue of the Americas
New York, New York 10020-1001
Attention: George Miller
Email: gmiller@mayerbrown.com

MAS One USA LLC
3420 South Ocean Blvd, #10T
Highland Beach, FL 32487
Attention: Douglas Brennan
Email: douglas.brennan@gmail.com